Harry J. OSBORN and Gwendolyn R. Osborn, Appellants,

v.

CITY OF CEDAR RAPIDS, Iowa, Donald J. Canney, Harold G. Schaefer, Wayne A. Murdock, Floyd T. Bergen, and Stanislavs Reinis, Appellees.

No. 66913.

Supreme Court of Iowa.

Sept. 29, 1982.

Minor Barnes of Pickens, Barnes & Abernathy, Cedar Rapids, for appellants.

Lynda E. Thomsen, Asst. City Atty., for appellees.

Considered by REYNOLDSON, C. J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

HARRIS, Justice.

The city brought three successive eminent domain proceedings to acquire plaintiffs' real property located in a residential area of Cedar Rapids. All were dismissed and the city thereafter condemned only two easements across the property. This mandamus action thereafter was brought on a theory that the property had in effect been "taken" and the city should be compelled to follow through with its earlier plans to acquire the land and pay compensation. The trial court held there had been no taking of the land and refused to issue the writ. On our de novo review we conclude there was a taking. Hence we reverse the trial court and remand the case for issuance of the writ.

Plaintiffs do not claim that the taking came about by physically possessing or using the land. Their argument is that the conduct of the city, especially in the series of condemnation suits, deprived them of the land's practical use. The city contends plaintiffs can use the property any way they could have previously. In a sense this is true but this is not conclusive. The principal, almost the exclusive, value of the property to plaintiffs did not lie in the use plaintiffs then made of it. They held the property mainly for its development potential.

Plaintiffs have owned their property since 1955. It is presently zoned as single family residential but is located in an area containing multiple family dwellings and commercial buildings. An apartment complex is adjacent to it. A shopping center adjoining the apartment complex is just 146 feet to the west.

During the 1950's the development of Cedar Hills, an extensive residential area to the west of plaintiffs' property, greatly increased the flow of surface water into Vinton ditch which traverses plaintiffs' land. The increased surface water prompted the city in 1971 to pass a resolution known as the Vinton ditch project. The resolution provides that a building permit will not be issued within an area 200 feet of each side of the center line of Vinton ditch unless approved by the city council after recommendation of the city engineer.

Although some construction has occurred within the proscribed area, the city has from time to time conveyed the impression that the resolution absolutely prohibits construction in the area. The city started acquiring properties in the project area in the 1960's and as early as 1973 expressed an intention to acquire the north 1.57 acres of plaintiffs' property.

The first of the condemnation suits was brought in 1976. According to the city's assertions the property was needed for "park purposes." But it does not seem that the city or its departments had any real intention of establishing a park. The park department was involved in the proceedings because it was expected to maintain the area as what was described as a "green belt."

After widely different valuations were placed on the property by the appraisers the

original condemnation proceedings were dropped. Plaintiffs suggest they were dropped because of the valuation evidence they would offer. The city, on the other hand, argues the original proceedings were dropped because of ongoing negotiations between it and plaintiffs for a settlement and because plaintiffs and a neighboring property owner were seeking to have the property rezoned so as to allow multiple family structures to be built. We think the city was prompted, at least in part, to drop the proceedings because of the risk of a high award.

The second proceedings were brought in 1977. Again a park was the stated reason for the acquisition. And again the proceedings were dismissed without trial after unsuccessful settlement negotiations. This time, however, negotiations did not center on the widely divergent appraisals. Rather, the parties were considering another proposal for rezoning.

An agreement was nearly reached between the plaintiffs and city which would have allowed development of a portion of plaintiffs' property in return for dedication to the city of most of the area which was the subject of the condemnation proceeding. Plaintiffs were willing to donate the agreed portion of their land to the city so long as it would be used for park purposes and so long as the city would give them R–4 zoning on the rest of the property. This was the arrangement worked out by the plaintiffs' neighbors and the city. On the neighboring property the land was donated, the property rezoned R–4, and an apartment complex was built.

In plaintiffs' case, however, the city agreed only to R–3G zoning which would not permit construction of the type of apartment buildings desired by the plaintiffs. Accordingly plaintiffs withdrew their rezoning petition in the fall of 1977. The second condemnation suit was dismissed and no further action was taken by either party until 1979.

In 1979 the city renewed its effort to acquire a large portion of plaintiffs' property; 1.364 acres were sought together with two additional sewer easements, one fifty to one hundred feet wide and another ten feet wide. The city, in conformity with its usual practice, obtained two assessments. One fixed the damages for the taking at $34,750. The other set the damages at $10,-000. In advising of the renewed efforts to condemn the property the city engineer advised plaintiffs of the lower appraisal but not of the higher. This was misleading to plaintiffs because the city, in notifying them of the intended acquisition, stated it would pay "on the highest appraisal." The city's final offer to plaintiffs, in the amount of $11,000, based on the lower appraisal, was forwarded by a letter which again did not indicate the existence of the higher appraisal.

When the $11,000 offer was not accepted the third condemnation proceedings were brought. This time the stated purpose of the taking was for "sanitary sewer and drainage." The condemnation commission was scheduled to meet on January 24, 1980, to assess damages. Two days before the hearing plaintiffs and their attorney met with the city engineer and advised him that an earlier appraisal by plaintiffs' expert witness had been updated and damages to the property were now set at $147,000. This was substantially higher than the earlier estimate of the same witness. When the city engineer reported this to the council the condemnation proceedings were dropped by the city.

Following cancellation of the third proceedings the plaintiffs served a written demand on the city to condemn the real estate described in the third condemnation notice. The city did not comply with the demand and advised plaintiffs that the city "has decided not to acquire the parcel of property which we have discussed with you in the past, at this time, but instead intends to acquire only a sanitary sewer easement . . . ."

The fourth condemnation proceedings were brought to acquire an easement over plaintiffs' property "for sanitary sewer and drainage." These proceedings resulted in an award of $9400 including attorney's fees. There was no appeal.

Plaintiffs' tract and that of a neighbor to the east are the only properties within the Vinton ditch project which the city has not acquired in fee. The project extends a distance of about one mile. Any prospective purchaser of the property would discover the condemnation proceedings in the past and the susceptibility of the property to such proceedings in the future. In effect, then, the city has gained the practical use of the northern part of plaintiffs' property. Yet the city has paid only for easements.

I. ... [M]andamus will lie to compel condemnation proceedings where there has been a taking of private property for public use within the constitutional sense without compensating the owners. Where a condemning authority did not acquire the rights to property taken later, the property remedy may be by mandamus to compel further condemnation. [Authorities.]

*Hammer v. County of Ida,* 231 N.W.2d 896, 902 (Iowa 1975). Mandamus is an equitable action. *Phelps v. Board of Supervisors of Cty. of Muscatine,* 211 N.W.2d 274, 277 (Iowa 1973); Iowa Code § 661.3 (1981). Our review is de novo. Iowa R.App.P. 4. Our de novo review does not extend to the extent of the taking or the amount of damages. *Phelps,* 211 N.W.2d at 276.

II. Under art. I, § 18 of the Iowa Constitution "private property shall not be taken for public use without just compensation first being made." Plaintiffs' claim comes down to an assertion that they are in effect left with a hollow title to some of their land, that the public has in effect taken its use away from them. Although this is not the most routine claim for condemnation disputes it is far from unique. As we explained in *Phelps:*

... [A] "taking" does not necessarily mean the appropriation of the fee. It may be anything which substantially deprives one of the use and enjoyment of his property or a portion thereof. [Authorities.] In the present [*Phelps*] case, there has been a taking if, as plaintiffs contend, there has been a substantial in-

terference with their use and enjoyment of their property....

211 N.W.2d at 276.

Just what constitutes "substantial interference" is essentially a fact question. *Donohoe Construction Co. v. Montgomery County Council,* 567 F.2d 603, 608 n. 13 (4th Cir. 1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1148 (1978). There is no set formula; each case turns on its own particular circumstances. *E.g., Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631, 648 (1978). Under the facts here, we find there was substantial interference with *plaintiffs' use and enjoyment of their property.*

The city's repeated bringing and dropping proceedings certainly qualifies as interference under *Phelps.* The city argues that the proceedings were dropped because of settlement negotiations. But we think the effect of repeated condemnation efforts cannot be dismissed so easily. Settlement negotiations are commonly undertaken in these, as they are in most, proceedings. Moreover, these proceedings were always reinstituted so there was a nearly continuous threat against the property. The "unreasonable protraction of condemnation proceedings or abandonment thereof after and extended period of time" is a municipal practice with little to commend it. *See Skaff v. Sioux City,* 168 N.W.2d 789, 793 (Iowa 1969).

The plaintiffs held their property primarily for its development potential. This potential has been suppressed by the city's actions. It seems plain that prospective buyers will be discouraged from buying the plaintiffs' property for development when the city's intentions are stated to be temporary. The city has decided not to acquire the property but only "at this time." The loss of such potential investment-backed expectations is a factor to be considered in determining whether there has been a taking. *See, e.g., Richmond Elks Hall Ass'n v. Richmond Redevelopment,* 561 F.2d 1327, 1330 (9th Cir. 1977).

The city's tactics in acquiring the easement seem unduly oppressive. The city failed to disclose the larger appraisal to the plaintiffs, although it was the city's stated practice to "pay on the highest appraisal." Similarly, while the Vinton ditch project was already an established city goal, the first two condemnation proceedings said the acquisition of plaintiffs' land was for "park purposes." Significantly, the city seems to have singled out these plaintiffs in claiming that mere easements across their land were sufficient for the public. Virtually all other land along the ditch was acquired in fee by the city. This is a strong indication that plaintiffs' property also has been taken for public use.

We conclude there was a taking of plaintiffs' property, described in the third condemnation proceedings. A writ of mandamus should have issued compelling the city to proceed in the regular manner and to pay plaintiffs accordingly. The case is reversed and remanded for a trial court order in conformance with the views here expressed.

REVERSED AND REMANDED.

All Justices concur, except McCORMICK, J., who dissents.

McCORMICK, Justice (dissenting).

The first two condemnation proceedings were dismissed because of settlement negotiations between the parties. Only the third proceeding was dismissed because the City wished to avoid the risk of a high award. It then condemned only an easement. Its evidence at trial established it had no plan to acquire any greater right in the property. I do not believe the evidence shows the City ever purported to bargain with the Osborns or other property owners with its zoning power. Nor do I believe the Osborns were misled by the City's offer to pay on the basis of the lower appraisal in the third proceeding.

For mandamus to be warranted it was necessary for Osborns to prove that the City's conduct constituted a taking in the constitutional sense. I agree with the trial court that they did not meet this burden.