**Harry I. NADLER, Appellant,**

v.

**CITY OF MASON CITY, et al., Appellee.**

**Nos. 85–586, 85–503.**

Supreme Court of Iowa.

May 21, 1986.

Barry J. Nadler of Johnston, Brewer, Maddux & Nadler, Ames, for appellant.

Herman P. Folkers, Mason City, for appellee.

HARRIS, Justice.

For several years two buildings owned by plaintiff Nadler in downtown Mason City were targeted for an urban renewal project. A redevelopment plan for Mason City was in the offing prior to Nadler's acquisition of the property. Nadler admits he was aware of the plan when he purchased his buildings. He made a strong showing that he suffered extensive financial loss by reason of the long delay in proceeding with condemnation of his property. Contrary to his wishes there eventually were two actions. He first sought unsuccessfully to have his additional claims for lost rentals, deterioration, and vandalism submitted as a part of the appeal in the condemnation proceedings. Refused the right to join those additional claims, Nadler brought a separate suit for their recovery. He separately appeals from both the condemnation award and from an adverse verdict in the separate suit. We affirm.

During the 1960's the city of Mason City began an extensive renewal project in its downtown business district. In the early 1970's the city adopted a redevelopment plan and obtained initial funding for the

project. In 1977 a developer was selected and a plan was adopted which called for the construction of a shopping mall on property to be acquired by the city. In 1978 a controversial election was held in which voters agreed to issue bonds to finance construction of the mall.

In 1978 Nadler purchased two properties in the project area which he rented to both commercial and residential tenants. In 1979 the city sent notices to Nadler and his tenants informing them the city would offer to purchase the property within ninety days. No such offer was forthcoming and in May 1979 Nadler and his tenants were again notified of the city's intent to acquire the property within a short time. Not surprisingly all of Nadler's tenants moved out by October 1980.

In February 1980 the city offered to buy the property contingent upon the sale of bonds to finance the project. When the bonds were not sold the purchase was not completed. The city had purchased other property in the project area with federal funds but apparently ran out of money before it could buy Nadler's.

Nadler was unable to find new tenants and his buildings were vandalized. Because the city demolished buildings in the area Nadler's property was surrounded by rubble and weeds. He says he was forced to pay utilities, insurance, and other taxes even though he no longer received any rental income.

In February 1982 Nadler filed a petition requesting a writ of mandamus to compel the city to begin condemnation proceedings. A writ was issued and in August 1983 the city filed the application for condemnation.

The compensation commission assessed damages at $29,000 for each of the two properties. *See* Iowa Code section 472.4 (1985). Nadler appealed the assessment to district court pursuant to section 472.21 and attempted to include in his petition the additional claim that he was "severely damaged" by the city's "unreasonable delay in instituting proceedings to acquire [his] property, including lost rents, deterioration and vandalism, resulting in lost personal property and fixtures [resulting in] consequential damages in the amount of $30,-000."

The trial court sustained the city's motion to strike the additional claims. Those claims were thereafter made the subject of the separate suit which was tried before a jury. That jury returned a verdict for the city. In the meantime a different jury considered Nadler's appeal from the compensation award and fixed the damages at the same $29,000 figures which the commission had set.

I. Nadler's first assignment complains of language included in a jury instruction in the trial of his separate action for damages. That instruction informed the jury about the effect of delay in bringing the condemnation proceeding. The instruction was as follows:

The law provides that the owner of property has the right to its lawful use and enjoyment without interference by governmental bodies. When the beneficial use of property is destroyed, a property right has been taken. The law of this state further provides that a property right may not be taken or interfered with by a governmental body without payment of just compensation to the owner thereof.

You are instructed that once a development project is announced by a governmental body, the unreasonable protraction or delay or abandonment thereof after an extended period of time may constitute an unreasonable interference with the use of the property involved.

*In considering the reasonableness or unreasonableness of the conduct of the City of Mason City, you may and should consider the good faith or the lack of good faith in the city's instigation and prosecution of condemnation proceedings against plaintiff's property.* There is no exact standard as to what delay or interference is reasonable or unreasonable, but such determination must be based upon a fair, intelligent, dispassionate and impartial consid-

eration of the evidence and the rightful expectations of a reasonable and prudent property owner under the circumstances. (Emphasis added.) Nadler challenges the emphasized language because he thinks "the good faith or the lack of good faith on the part of the city is irrelevant."

The precise question seems to be one of first impression with us, although two of our cases are instructive. In *Osborn v. City of Cedar Rapids*, 324 N.W.2d 471 (Iowa 1982), we considered the definition of "substantial interference." We noted:

> Just what constitutes "substantial interference" is essentially a fact question. There is no set formula; each case turns on its own particular circumstances.

*Id.* at 474 (citations omitted).

*Skaff v. Sioux City*, 168 N.W.2d 789 (Iowa 1969), like the present case, involved an independent action brought against the city on the claim of unreasonable delay in commencing eminent domain proceedings. Although we held the delay in that case was unreasonable we did not specifically address whether the city acted in good faith. In discussing the proceedings in district court we however stated:

> The trial court found the city as condemnor had not in *good faith* diligently instituted and prosecuted the eminent domain proceedings, and that the delay was unreasonable giving rise to this collateral action for consequential damages.

*Id.* at 790 (emphasis added).

The intimation in the language quoted from *Osborn* and *Skaff* is consistent with authorities elsewhere. We note the following:

> When condemnation proceedings are discontinued, even when there has been no disturbance of the actual occupancy of the land, the owner often suffers pecuniary loss during the pendency of the proceedings. It is difficult to find tenants and unsafe to build on the land. [The owner] may stop work on a partly constructed building or adapt it to the proposed improvement. [The owner] is almost certain to have incurred an attorney's fee. But it is held, in the absence of *bad faith* or unreasonable delay upon the part of the party which instituted the proceedings that the owner is not constitutionally entitled to recover such expenses and losses.

6 Nichols, *Eminent Domain* § 26.45 (3d ed. 1985) (emphasis added). Other authorities also refer to the element of good faith. *See* 27 Am.Jur.2d *Eminent Domain* § 461 (1966) (General rule that property owner may not recover damages for condemnor's abandonment of proceedings or delay in commencing action "is qualified ... by the requirement of good faith on the part of the condemnor in instituting the action, and the diligent prosecution thereof, unreasonable delay being held a ground for imposing a liability ...."); 30 C.J.S. *Eminent Domain* § 436 (1965) (in action by property owner with respect to property taken or damaged, "whether defendant acted in good faith in entering on plaintiff's land" is a question for the trier of fact); *see generally* Annot., 92 A.L.R.2d 355 (1963) (discussing effect of condemnor's bad faith or unreasonable delay when eminent domain proceedings are abandoned).

It is now contended that good faith on the part of a condemnor is not a relevant consideration in assessing damages because, it is said, bad faith and protracted delay are separate and alternative grounds for damages. The cited authorities do not however suggest, much less do they demand, that good faith on the part of a condemnor must be considered in a vacuum, wholly isolated from any protracted delay.

The facts here present a compelling example of why the condemnor's good or bad faith should not be treated so exclusively. Plaintiff bought this property long after it was targeted for the renewal project and a year after the election which authorized its funding. The good faith claimed by the city had to do with the exigencies of delays incident to obtaining matching federal funding, matters which were in full public view before plaintiff made his purchase. Under these circumstances it is only fair for the city's good faith to be weighed in

the balance in assessing damages for the delay.

It is only logical to conclude that good faith or bad faith are factors to be weighed in determining whether a delay has been unreasonable. The challenge to the instruction is without merit.

II. The jury considering the separate suit found by a special verdict that Nadler failed to establish by the greater weight of evidence that the city unreasonably interfered with his right to use his property. On appeal Nadler contends the trial court erred in overruling his motion for a new trial because "[t]he uncontroverted evidence ... does not support the jury's finding that there was not a substantial or unreasonable interference ...."

It is idle for one who bears a burden of proof on an issue to protest an adverse finding on the ground that evidence supporting the contention was "uncontroverted." A jury is not bound to believe evidence and no obligation to do so arises merely because it is not controverted. *Loudon v. Hill,* 286 N.W.2d 189, 193 (Iowa 1979). Even when the controlling facts are not disputed it remains for the finder of facts, where reasonable, to draw different inferences from them. Iowa R.App.P. 14(f)(17).

A trial court, ruling on motions for new trial, "has a broad, but not unlimited, discretion in determining whether the verdict effectuates substantial justice between the parties." *Christensen v. Shelby County,* 287 N.W.2d 560, 561–62 (Iowa 1980); Iowa R.App.P. 14(f)(3). A jury's findings of fact in a law action are binding on appeal if supported by substantial evidence. *Bauer v. Curran,* 360 N.W.2d 88, 91 (Iowa 1984); Iowa R.App.P. 14(f)(1).

Under these standards we are not inclined to disturb the ruling. The jury might well have found the city's conduct to be unreasonable, but was not bound to do so. The renewal plan for the mall was already adopted when Nadler bought the property. The problems faced by the city which caused the delay were not necessar-ily of the city's own making. This is not one of the rare cases where a plaintiff is entitled to a directed verdict. The assignment is without merit.

III. Nadler separately assigns error in the trial court ruling which struck his additional claims from the condemnation appeal and compelled him to litigate them in the separate trial we have described. As mentioned, the trial court viewed these as tort claims, inappropriate for consideration as damage items in a statutory condemnation proceeding. Although Nadler may feel he lost some tactical advantage by the ruling, and was unquestionably put to additional trouble and trial expense, we think the question has become moot. Nadler did not prevail on the claims. We should not speculate that the condemnation jury would be more inclined to favor his claims than was the jury which rejected them.

AFFIRMED ON BOTH APPEALS.

All Justices concur except REYNOLDSON, C.J., and SCHULTZ, J., who dissent, and McGIVERIN, J., who takes no part.

REYNOLDSON, Chief Justice (dissenting).

I respectfully dissent from division I of the majority opinion. Although the city's good or bad faith in the investigation and prosecution of the condemnation may be relevant as a separate ground for damages, the issue whether the delay was unreasonable should be objectively determined as a separate matter. Such a view is supported by the authorities the majority relies on.

While this court in *Skaff v. Sioux City,* 168 N.W.2d 789 (Iowa 1969), did make the statement the majority quotes, there is nothing in that decision indicating the trial court determined the delay in prosecution was unreasonable on the basis that the city acted in bad faith.

The trial court's finding, quoted in *Skaff,* was this:

There was lack of good faith on the part of the city in instituting the action

*and* there was no diligent prosecution thereof.

*Id.* at 792 (emphasis added). Trial court awarded damages "[b]y reason of the unreasonable delay of the city in the prosecution of the proceedings." *Id.*

The *Skaff* court's analysis quoted approvingly from a law review note, which described the difference between the cause of action for damages caused by a condemnor's bad faith in bringing or abandoning eminent domain proceedings, and a cause of action for damages for unreasonable delay:

> A practice somewhat related to bad faith is the unreasonable protraction of condemnation proceedings or abandonment thereof after an extended period of time. Although a condemnor may have valid reasons for delay, the courts, upon a finding of unreasonableness, have required compensation for resulting damages.

*Id.* at 793 (quoting Note, *The Condemnor's Liability for Damages Arising Through Instituting, Litigating, or Abandoning Eminent Domain Proceedings,* 1967 Utah L.Rev. 548, 553).

The Iowa court early recognized this distinction in *Ford v. Board of Park Commissioners,* 148 Iowa 1, 126 N.W. 1030 (1910). There this court held the condemnation "was not so long as that any one would be justified in holding it unreasonable," *id.* at 6, 126 N.W. at 1032, but nonetheless noted that "[i]f plaintiffs are entitled to [damages], it is because of the fact that the members of the board were activated by bad faith." *Id.* at 7, 126 N.W. at 1032.

That there may be a recovery based either on bad faith or on unreasonable delay is indicated in other authorities cited by the majority. Thus the quotation from *Nichols* is better understood if the emphasis as placed by the majority is moved in the following fashion:

> [I]t is held, in the absence of bad faith *or* unreasonable delay upon the part of the party which instituted the proceedings that the owner is not constitutionally en-

titled to recover such expenses and losses.

6 J. Sackman, *Nichols' The Law of Eminent Domain* § 26.45 (rev. 3d ed. 1985) (emphasis added). The same reemphasis clarifies the majority's quotation from American Jurisprudence:

> This [no-damage] rule is qualified, however, by the requirement of good faith on the part of the condemnor in instituting the action, *and* the diligent prosecution thereof . . . .

27 Am.Jur.2d *Eminent Domain* § 461, at 381 (1966) (emphasis added).

Other authorities further underscore this dual requirement:

> Recovery of damages against the condemnor for bad faith in bringing or abandoning condemnation proceedings is one of the judicially shaped exceptions that have eroded the general rule that just compensation does not include incidental damages. . . .
>
> . . . .
>
> A practice somewhat akin to bad faith, and, in fact, often grouped together with bad faith as another reason for making an exception to the rule disallowing damages, is unreasonable delay in prosecuting the condemnation action or abandonment after an extended time period. Although the condemning authority may have valid reasons for delay, a judicial finding of unreasonableness requires recovery for resulting damages.

3 P. Rohan & M. Reskin, *Condemnation Procedures and Techniques* § 14.02[3] (a), (b) (1985); *see State ex rel. Morrison v. Helm,* 86 Ariz. 275, 282, 345 P.2d 202, 206–07 (1959), *appeal dismissed,* 362 U.S. 609, 80 S.Ct. 960, 4 L.Ed.2d 1009 (1960); *Upper Third Street Development Corp. v. City of Milwaukee,* 8 Wis.2d 595, 600–01, 99 N.W.2d 687, 690 (1959); Annot., 92 A.L. R.2d 355, 363 (1963).

The instruction the majority approves tells the jury the condemnor's good faith would excuse an unreasonable delay. This concept finds no authoritative support. It blurs a long-standing distinction between separate causes of action for damages, one

based on bad faith and the other on unreasonable delay. Plainly, the condemnor might be well-intentioned but still cause a delay that by all standards would be unreasonable.

I would reverse the judgment in the damage action and remand for new trial.

SCHULTZ, J., joins this dissent.