Thomas **FOX**, Appellant,

v.

**INTERSTATE POWER COMPANY,**
Appellee.

No. 92–1191.

Court of Appeals of Iowa.

June 28, 1994.

Thomas Fox, pro se.

David L. Hammer and Angela C. Simon of Hammer, Simon & Jensen, Dubuque, for appellee.

Considered by DONIELSON, C.J., and HAYDEN and HABHAB, JJ.

## PER CURIAM.

Plaintiff Thomas Fox began operating as a dairy farmer in rural Winnebago County in 1981. He has about twenty-six cows. Fox's cows experienced bouts of mastitis, which is an inflammation of the mammary gland. Mastitis can be caused by injury or infection. The mastitis caused reduced milk production.

In 1987 Fox met Charles Syverson, an electrical engineer. Syverson told Fox his problems may be due to stray voltage. Fox complained to Interstate Power Company, alleging the company's electrical transmission lines were causing stray voltage on his farm. In particular, he believed stray voltage was coming from the primary neutral conductor, which is the grounded neutral conductor on the company's side of the distri-

bution transformer. A grounded conductor is connected to the earth through a grounding system. Any metallic structure connected to the neutral or to the grounding system will have some small voltage.

When the voltage in these metallic structures reaches a certain level, cows coming into contact with the metallic structures may exhibit nervousness or behavioral changes. This in turn may cause poor milk let-down and incomplete milk-out of the cows. Residual milk in the cow is a medium for bacteria growth and aggravates the condition of mastitis. Thus, stray voltage may reduce milk production.

In May 1987, in response to Fox's concerns, the company installed a Ronk blocker at the distribution transformer. The Ronk blocker is a transformer used to separate the primary neutral conductor from the secondary neutral conductor, which is the grounded neutral conductor on Fox's side of the distribution transformer. After installation of the Ronk blocker, the company's primary neutral would no longer cause stray voltage on the farm.

On February 20, 1989, Fox filed suit against Interstate Power Company alleging six theories: (1) negligent installation and supply of the electrical system; (2) the electrical system was installed in a defective condition; (3) the electrical system did not conform to the express warranty; (4) the company breached an implied warranty of fitness for a particular purpose; (5) the company breached an implied warranty of merchantability; and (6) defendant breached a contract for the sale of electricity. He sought damages for reduced milk production from December 1981 to May 1987. The company's answer alleged plaintiff's damages were caused by his own negligence.

The case was tried before a jury. Evidence was presented to show there are three sources for stray voltage: primary neutral to earth; voltage drop in the secondary neutral; and faulty equipment. Plaintiff's expert, Gerald R. Bodman, an agricultural engineer, testified he conducted certain tests which showed the source of stray voltage on Fox's farm was the primary neutral. Defendant's expert, Dr. Harold Cloud, a professor, disa-

greed with Bodman's conclusions from his tests on the farm. He testified the stray voltage at Fox's farm was caused by a secondary neutral voltage drop. The company's vice president of electrical operations gave the opinion the stray voltage on Fox's farm was not caused by the primary neutral.

There was also evidence a cow's milk production may be related to environment, milking procedures, nutrition, and genetics, as well as extraneous voltage. Two veterinarians, Dr. Carroll Gustafson and Dr. Jim Diemer, testified they had treated Fox's cows for mastitis caused by bacteria. These bacteria may be spread by hands, milking equipment, or the cow's environment. Plaintiff presented evidence he used good dairy practices and worked to prevent mastitis in his cows. Defendant presented testimony of Dr. David Reid, a veterinarian, stating Fox did not engage in appropriate practices and he could have improved the cows' environment in order to prevent the spread of bacteria which cause mastitis.

Plaintiff additionally presented evidence his milk production improved after 1987.

The case was submitted to a jury on the issues of negligence, strict liability, and implied warranty of fitness. The district court dismissed the other issues on defendant's motion for directed verdict. The jury returned a special verdict finding Fox and the company were both at fault for Fox's damages. Fault was assessed eighty percent to Fox and twenty percent to the company. Under Iowa Code section 668.3(1) (1991), because Fox was more than fifty percent at fault, no damages were awarded to him. Fox has now appealed pro se.

■ Plaintiff contends there is not substantial evidence in the record to support the jury's verdict. In particular, he claims there is insufficient evidence to support the jury's allocation of eighty percent of the fault to him. He states he was a prudent dairy farmer and his damages were not caused by his own fault.

■ Appellate review of apportionment of fault requires application of the substantial evidence rule. *Sandry v. John Deere Co.*, 452 N.W.2d 616, 620 (Iowa App.1989). A jury's findings of fact in a law action are binding on appeal if supported by substantial evidence. *Nadler v. City of Mason City*, 387 N.W.2d 587, 591 (Iowa 1986). Evidence is substantial if reasonable minds would find it adequate to reach the same conclusion. *Frontier Properties Corp. v. Swanberg*, 488 N.W.2d 146, 147 (Iowa 1992). Even if we might draw a contrary inference from the evidence, we may not substitute our view of the evidence for the jury's view. *Neighbors v. Iowa Elec. Light & Power Co.*, 175 N.W.2d 97, 101 (Iowa 1970).

We find there is sufficient evidence in the record to support the jury's allocation of fault to Fox. The evidence showed Fox's cows suffered from mastitis caused by bacteria and the bacteria could be easily spread from cow to cow. However, Fox did not keep records of which cows suffered from mastitis. Also, he did not wash his hands or sanitize the milking equipment between cows. There was also evidence he could have done more to keep the cows' environment clean, which would have restricted the spread of bacteria. We decline to overturn the jury's verdict on the basis of insufficient evidence.

Plaintiff also challenges the application of the Iowa comparative fault act in this case. He encourages us to readopt the pure theory of comparative fault which the supreme court originally adopted in *Goetzman v. Wichern*, 327 N.W.2d 742, 754 (Iowa 1982). Under this theory, an injured party's recovery was diminished in proportion to the party's negligence, and recovery was not barred unless the injured party's negligence was the sole proximate cause of the damages. *Id.* Plaintiff believes the pure theory of comparative fault is more fair to litigants.

However, as plaintiff recognizes, in 1984 the Iowa legislature adopted chapter 668, which establishes a modified comparative fault system. *Coker v. Abell–Howe Co.*, 491 N.W.2d 143, 147 (Iowa 1992). Under this modified comparative fault system, if the claimant's percentage of fault is more than fifty percent, the claimant cannot recover damages. *Bokhoven v. Klinker*, 474 N.W.2d 553, 556 (Iowa 1991).

This provision of the modified comparative fault system is set forth in section 668.3(1), which provides:

Contributory fault shall not bar recovery in an action by a claimant to recover damages for fault resulting in death or in injury to person or property unless the claimant bears a greater percentage of fault than the combined percentage of fault attributed to the defendants, third-party defendants and persons who have been released pursuant to section 668.7, but any damages allowed shall be diminished in proportion to the amount of fault attributable to the claimant.

Thus, under section 668.3(1), recovery is barred if the claimant bears a greater percentage of fault than the percentage attributed to defendants, third-party defendants, and released persons. *Husker News Co. v. South Ottumwa Sav. Bank*, 482 N.W.2d 404, 409 (Iowa 1992); *Slager v. HWA Corp.*, 435 N.W.2d 349, 351 (Iowa 1989). Here, plaintiff was found to be eighty percent at fault and defendant twenty percent at fault. Under section 668.3(1), plaintiff is barred from recovery because his percentage of fault is greater than the percentage attributed to defendant.

Generally, we defer to the legislature in questions of public policy. *State v. Wahlert*, 379 N.W.2d 10, 14 (Iowa 1985). The legislature has considerable discretion in determining what constitutes the public health, safety, and welfare. *State v. Hartog*, 440 N.W.2d 852, 856 (Iowa 1989). This is why courts grant such legislation a highly deferential standard of review. *Id.* at 856–857. Plaintiff has not shown section 668.3(1) is unconstitutional or any sufficient reason why it should be struck down. We conclude plaintiff has not set forth any sufficient reason to find section 668.3(1) should not apply in this case.

The supreme court has directed us to consider the issue of the appendix costs on appeal. Fox alleged the company's designation of appendix contained extraneous material. Under Iowa Rule of Appellate Procedure 15(b), costs may be assessed for appendix materials which are unnecessary or have no bearing on the issues appealed. *Webb v. Giltner*, 468 N.W.2d 838, 841 (Iowa App. 1991). The inclusion of irrelevant portions of the record results in two problems, additional printing expense and an unwarranted reading burden on the members of the appellate courts. *In re Marriage of Lacaeyse*, 461 N.W.2d 475, 478 (Iowa App.1990).

The company designated the entire cross-examination of Bodman, the entire direct examination of Cloud, and the entire direct examination of Reid. This portion of the appendix is 304 pages of the total of 423 pages. The cost of the portions of the appendix designated by the company was $1,098, which the company has already advanced to Fox. The total cost for the appendix was $1,544.40. We find thirty-six pages which are unnecessary. We therefore assess 8.5% of the costs of the appendix, or $131.24 to Interstate Power Company. Fox must return $966.76 of the amount advanced to him.

We affirm the district court on all issues presented in this appeal. Costs of this appeal not addressed above are assessed to Thomas Fox.

**AFFIRMED.**