Hillsborough
No. 88-402

METROPOLITAN PROPERTY & LIABILITY INSURANCE COMPANY

v.

JOHN MARTIN, ADMINISTRATOR OF THE ESTATE OF LEONARD MARTIN

December 29, 1989

*Wiggin and Nourie*, of Manchester (*Gordon A. Rehnborg, Jr.*, and *Doreen F. Connor* on the brief, and *Ms. Connor* orally), for the plaintiff.

*James M. Winston*, of Manchester, by brief and orally, for the defendant.

SOUTER, J. In this declaratory judgment proceeding, the Superior Court (*Dunn*, J.) ruled the defendant's decedent entitled to coverage for injury by an uninsured motorist, under an automobile policy so defining "insured" as to include a brother residing in the same household as the named insured. In appealing, the plaintiff assigns error to the court's refusal to estop the defendant collaterally from relitigating an earlier factual determination that the decedent was not such a resident, said to have been rendered in a contest over coverage under a policy issued on the decedent's mother, containing terms similar to those now in issue. We reverse.

On June 19, 1982, the decedent, Leonard Martin, died in an auto crash allegedly caused by a driver insufficiently insured to cover the resulting liability. At that time, the decedent's brother James had a liability policy with underinsured motorist coverage issued by the plaintiff, Metropolitan Property & Liability Insurance Company. The decedent's mother, Frances, had a similar policy issued by Peerless Insurance Company. The definition of "insured" in the Metropolitan policy issued to James included a relative of the named insured, and the policy defined "relative" as "a person related to the named insured by blood, marriage or adoption, who is a resident of the same household [as the named insured] ...." So far as its terms are relevant here, the Peerless policy issued to Frances provided coverage to "any resident of the same household [as the named insured]." At the time in question, Frances, James and certain other members of their family lived at 442 Merrimack Street in Manchester.

The defendant, as administrator of the decedent's estate, brought claims for underinsured motorist benefits under each of the foregoing policies and under two others, also issued to members of the decedent's family. Each carrier denied coverage, and Metropolitan instituted this declaratory judgment proceeding, RSA 491:22, to litigate the resulting dispute. Peerless subsequently petitioned the superior court to enjoin arbitration of the claim under its policy, asserting that there was no coverage. *See Peerless Ins. Co. v. John Martin, Jr., Adm'r.*, Hillsborough No. 86-E-517. After Peerless had obtained a favorable judgment, Metropolitan moved for summary judgment on the basis of offensive collateral estoppel, arguing that the judgment for Peerless rested on a finding that at the time of death the decedent had been a resident of Keene, not of 442 Merrimack Street in Manchester. The motion for summary judgment was denied; the issue of coverage was litigated on the merits; collateral estoppel was claimed once again and was again

rejected; and declaratory judgment was entered for the defendant, based on a finding that the decedent had indeed been a resident of 442 Merrimack Street within the same household as his brother James at the relevant time. In this appeal, Metropolitan seeks reversal with an instruction to enter judgment in its favor by predicating collateral estoppel on the finding in the earlier *Peerless* litigation that the decedent was a resident of Keene at the time of his death.

The much-discussed requirements for collaterally estopping relitigation of a fact determined in a prior proceeding and underlying its judgment need not be canvassed anew or in detail here.

> "[T]he issue subject to estoppel must be identical in each action, the first action must have resolved the issue finally on the merits, and the party to be estopped must have appeared as a party in the first action, or have been in privity with someone who did so. *See Duncan v. Clements*, 744 F.2d 48, 51 (8th Cir. 1984). These conditions must be understood, in turn, as particular elements of the more general requirement, that a party against whom estoppel is pleaded must have had a full and fair prior opportunity to litigate the issue or fact in question. *See Sanderson v. Balfour*, 109 N.H. 213, 216, 247 A.2d 185, 187 (1968); *Duncan v. Clements supra.*"

*Daigle v. City of Portsmouth*, 129 N.H. 561, 570, 534 A.2d 689, 693 (1987). Metropolitan argues that the earlier determination in the *Peerless* litigation that the decedent's residence was in Keene at the time of death, not 442 Merrimack Street in Manchester, qualifies for present enforcement under these requirements. The defendant was a party to the earlier *Peerless* action. Peerless's request to enjoin arbitration on the ground of no uninsured motorist coverage turned on whether the decedent resided in his mother's household at the time of death. After litigation on the merits, the master before whom the *Peerless* suit was tried found "that Leonard Martin was not a resident at the 442 Merrimack Street ... home of his mother ... on June 19, 1982, within the context of the subject policy of insurance," and on that basis the injunction was issued and judgment entered in the insurer's favor, from which the present defendant took no appeal. Metropolitan submits that the trial court should have applied the estoppel doctrine to bar relitigation of the common factual element.

The defendant proffers two arguments in support of the superior court's contrary ruling. He argues, first, that the master in *Peerless* found only that the decedent was not a resident of his mother's household at 442 Merrimack Street, leaving open the question whether he might be a resident of the same household as his brother James. Second, he argues that the *Peerless* proceeding was so clearly limited to the determination of residence within the meaning of the Peerless policy that to apply its determination of residence in subsequent litigation under a different policy would offend the requirement of *Sanderson v. Balfour supra*, that the party to be estopped must have enjoyed a full and fair opportunity in the prior proceeding to litigate the fact in issue. We find no merit in either position.

In contending that the earlier finding of no residence in the mother's household at 442 Merrimack Street left open the possibility of residence in the brother's household at the same address, the defendant alludes to legal definitions of "residence" and "household" that should be made explicit. "Residence" is commonly understood to refer to the place where an individual physically dwells while regarding it as his principal place of abode, *see Holyoke Mutual Ins. Co. v. Carr*, 130 N.H. 698, 699–700, 546 A.2d 1070, 1070–71 (1988); *Connolly v. Galvin*, 120 N.H. 219, 220–21, 412 A.2d 428, 429 (1980); *cf.* RSA 21:6-a, while "household" is understood to be a group of people dwelling as a family under one head and under one roof, *Howard v. Hartford Ins. Co.*, 127 N.H. 727, 731, 507 A.2d 230, 232 (1986); *Cartier v. Casualty Co.*, 84 N.H. 526, 527, 153 A. 6, 6–7 (1931). Consequently, a finding that a given individual is not a resident of a named household dwelling at a certain address is consistent either with a finding of non-residence at the address or a finding of residence there but without membership in the household. Thus it is that the defendant argues that the *Peerless* finding that the decedent was not a resident of his mother's household at 442 Merrimack Street was not tantamount to a finding that he did not reside there, and left open the possibility that he resided in some other household (*i.e.*, his brother's), dwelling at that address.

The logical appeal of this argument, however, lies in its isolation from the full context of the master's report, which cannot reasonably be viewed as a narrow determination about the household structure or structures at 442 Merrimack Street, but can only be interpreted as a finding that the decedent did not reside at 442 Merrimack Street at all. Although we should not read too much significance in the fact that the master omitted any express

reference to "household" in couching his conclusion that the decedent "was not a resident at the 442 Merrimack Street ... home of his mother," it is essential to recognize that the master prefaced that conclusion with findings that "the main focus of [the decedent's] life was centered in the Keene area. It was there that he spent the majority of his time both as a student and working. He lived with a woman with whom he had a serious relationship. He also confirmed his commitment to the Keene area when he registered to vote."

There is no question that the master in *Peerless* was thereby finding that the decedent had no residence at 442 Merrimack Street, in any household, a fact that the trial judge in the instant case correctly understood and described in the order denying reconsideration, where he stated that the master in *Peerless* "found [the decedent] was not a resident at 442 [Merrimack] Street" at the relevant time. That is, of course, the same fact in issue under the Metropolitan policy in this case, there being no indication in the texts of the policies that the concept of residence is not identical in each of them. It is therefore simply irrelevant to the application of collateral estoppel in this case that 442 Merrimack Street may, in theory or in fact, have sheltered more than one household.

■ The defendant's second contention, that he enjoyed no full and fair opportunity to litigate the relevant issue in the prior trial, is an umbrella covering a number of discrete points. He claims, for example, that it would be unfair to estop him when Metropolitan would not be estopped; but the requirement of mutuality was conclusively abandoned over twenty years ago in *Sanderson v. Balfour supra*. He argues that he cannot be fairly estopped, because Metropolitan failed to seek consolidation of this proceeding with the trial on the *Peerless* petition; but collateral estoppel is not some sort of consolation prize reserved for those who unsuccessfully sought an earlier trial jointly with another litigant similarly situated. The defendant argues it would be unfair to estop him by the determination of an earlier action in which he was an unwilling defendant; but the propriety of recognizing an estoppel does not depend on a party's previous procedural posture. *See Petition of Breau*, 132 N.H. 351, 357, 565 A.2d 1044, 1049 (1989) (applying collateral estoppel offensively).

■ Finally, the defendant emphasizes a remark of the master in the *Peerless* case, that he meant to decide the issue of residence only for the purpose of applying the Peerless policy. The defendant holds this up as an indication that he was precluded in the earlier

action from attempting to establish the decedent's residence in his brother's, as distinguished from his mother's, household. The mere fact, however, that the *Peerless* court expressly limited its findings to the purpose of applying the policy before it has no significance. The only case a court can ever try is the one before it, and the application of collateral estoppel depends not on a party's opportunity to join extraneous issues for trial in an earlier case, but on the identity of issues as between two actions or suits tried at different times. Thus the defendant's argument that the issues of household membership are different in the two cases simply ignores the fact that the issue of residence at 442 Merrimack Street is common to and dispositive of each. This was clear before the trial of the instant case, but it was obvious beyond peradventure at the conclusion of the evidence, the record of which discloses no apparent attempt by the defendant to prove that separate households existed within the Martin family living in their Manchester house. Although the defendant seeks to make something of the evidence that the building at 442 Merrimack Street contained two small second-floor apartments above a large apartment on the first floor, no witness spoke of anyone living upstairs, both James and his father described the Martin children as living together with their parents, and even their counsel spoke of the Martins' household in the singular. In fact, the second trial focused on the same issue that the first turned on, whether the decedent resided in Manchester or Keene. Although the defendant succeeded on the second try where he had failed on the first, there is no indication that in the earlier trial he was limited or misled in his litigation of the common issue in any way that would render it unfair to apply the normal estoppel rule. The second judgment must accordingly be reversed in favor of judgment to be entered for the plaintiff.

*Reversed.*

All concurred.