Merrimack
No. 91-011

THE CONCORD GROUP INSURANCE COMPANIES

v.

ERIC R. SLEEPER AND KENNETH J. ANDERSON

November 8, 1991

*Bouchard & Mallory P.A.*, of Manchester (*Susan A. Vaillancourt* on the brief and orally), for the plaintiff.

*Rinden Professional Association*, of Concord (*Paul A. Rinden* and *John J. A. Schrepfer* on the brief, and *Mr. Rinden* orally), for the defendants.

BROCK, C.J.    The defendants, Eric Sleeper and Kenneth Anderson, appeal from a ruling of the Superior Court (*Hampsey*, J.) denying them insurance coverage under an insurance policy issued by the plaintiff, Concord Group Insurance Companies (CG). We reverse and remand.

The action arises from a June 9, 1987 automobile accident in Franklin. A Chevrolet S-10 pickup truck driven by Eric Sleeper, a youth of sixteen years at the time, and owned by Mark Gauthier, overturned causing serious injuries to Kenneth Anderson, a passenger. CG filed a petition for declaratory judgment seeking to deny coverage to Eric under an automobile liability policy it issued to Sally French, Eric's grandmother, on the ground that Eric was not a resident of his grandmother's household.

The following underlying facts are not in dispute. Because of disciplinary problems at home, Eric lived at various times with his father in Virginia; his paternal grandmother in Virginia; his maternal grandmother, Sally French, in Franklin; and with his mother and stepfather, Phyllis and Steven Taylor, also of Franklin. Between November 1986 and February 1987, he lived in either his mother's or his grandmother's household in Franklin. At some point in January or February 1987, problems with his mother came to a head, and Eric moved into his grandmother's guest room. He brought with him a partial wardrobe, posters, a stereo, and certain necessities. At least some of his other belongings remained stored in his bedroom at his mother's home, and he continued to use his mother's mailing address. When applying for his first driver's license in the spring of 1987, prior to the accident, he used his grandmother's address.

In February 1987, Eric was arraigned for criminal mischief in Franklin District Court and subsequently placed under the supervision of the probation department. Eric, together with his attorney, then developed a diversion program requiring, among other conditions, that he continue to live with his grandmother. In early May, despite the probation condition, Eric moved into an apartment on Prospect Street in Franklin with several friends. This arrangement was short-lived and, according to Eric, he moved again approximately two weeks later. From Prospect Street, he moved into an apartment with his girl friend in Franklin, which is where Eric lived at the time of the accident.

Shortly after the accident, he broke up with his girl friend, moved to his mother's residence for a period of about a week, and then moved back to his grandmother's house by July 11, 1987, where he remained only until the fall of 1987. On this evidence the trial court concluded that Eric was not a resident of his grandmother's home for purposes of insurance coverage at the time of the accident and granted summary judgment in favor of CG.

██ Summary judgment affords savings in time, effort, and expense by avoiding a full trial under certain circumstances. *Green Mt. Ins. Co. v. Bonney*, 131 N.H. 762, 766, 561 A.2d 1057, 1059 (1989). The value of judicial economy may not be gained, however, at the expense of denying "a litigant the right of trial where there is a genuine issue of material fact to be litigated." *New Hampshire York Co. v. Titus Constr. Co.*, 107 N.H. 223, 225, 219 A.2d 708, 710 (1966). Consequently, RSA 491:8-a, III places on the moving party the burden of showing "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Moreover, the reviewing court must consider the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. *McElroy v. Gaffney*, 123 N.H. 58, 60, 457 A.2d 429, 430 (1983). It has been recognized that the presence of a question involving state of mind or intent does not automatically foreclose the application of summary judgment, but it should be cautiously and sparingly invoked in such instances. *See generally Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473 (1962); C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2730, at 236–38 (2d ed. 1983).

The defendants argue that CG has failed to satisfy its burden of showing that no genuine issue of material fact exists relating to Eric

Sleeper's residency at the time of the accident for purposes of insurance coverage.

■ The insurance policy issued by CG to Eric's grandmother, Sally, provides under Part I that "Persons Insured" include:

"(b) with respect to a non-owned automobile, . . . (2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation . . . is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission."

The policy definitions under Part I further provide: "'[R]elative' means a relative of the named insured who is a resident of the same household." The term "residence," in this context, refers to the place where an individual physically dwells, while regarding it as his principal place of abode. *Metropolitan Prop. & Liabil. Ins. Co. v. Martin*, 132 N.H. 593, 596, 574 A.2d 931, 933 (1989). A determination of residency involves weighing a number of factors, *Holyoke Mutual Ins. Co. v. Carr*, 130 N.H. 698, 699, 546 A.2d 1070, 1071 (1988); *Connolly v. Galvin*, 120 N.H. 219, 220–21, 412 A.2d 428, 429 (1980), and in cases where a period of residency is followed by physical absence, as in this case, the individual's intent is particularly important. Annotation, *Who is "Resident" or "Member" of Same "Household" or "Family" as Named Insured, within Liability Insurance Provision Defining Additional Insureds*, 93 A.L.R. 3d 420, 427–28 (1979); *see also* 1 WIDISS, UNINSURED & UNDERINSURED §§ 4.12, 4.13, at 94–95 (2d ed. 1990).

CG argues that Eric's own deposition testimony demonstrates his intent eventually to return to his mother's home once they resolved their problems and, in any event, not to return to his grandmother's home after he moved out in the late spring of 1987. His statements, however, must be weighed against the complexities lent by his young age, immaturity, court involvement, and strained family relationships at that time. These circumstances support an inference that, by moving from his grandmother's home, Eric attempted what may be considered an experiment with independence. Eric, however, was a sixteen-year-old ninth grade dropout, and, although employed, he did not achieve financial independence from his mother and grandmother. While his general desire to return to his mother's home at some time in the future is evident, the record does not conclusively reveal where Eric intended to live in the likely event that he failed to make it on his own.

Furthermore, in light of Eric's young age, the import of his deposition testimony is obscured by the additional issue of whether Eric was an emancipated child at the time of the accident. We are concerned with emancipation in the sense that it relates to the parental rights of control and authority over the child. 59 AM. JUR. 2d *Parent and Child* § 80 (1987). If Eric was not emancipated, his intent diminishes as a factor, and our focus becomes more concerned with his parents' intentions regarding his living arrangements. *See Tencza v. Aetna Casualty and Surety Co.*, 111 Ariz. 226, 228, 527 P.2d 97, 99 (1974) (upholding trial court's finding that stepdaughter was emancipated and therefore not a resident of stepfather's household for insurance purposes).

Emancipation is never presumed; rather, the person asserting it has the burden of proving that the child is indeed emancipated. 59 AM. JUR. 2d, *supra* § 85. Moreover, it is the parents' intent that governs whether a child has been emancipated, and with the few exceptions of entering into marriage or military service, emancipation may not be accomplished by an act of the child alone. 59 AM. JUR. 2d, *supra* §§ 80, 83–85. Although emancipation is often implied from the particular facts and circumstances of a given case, we are unable to say that Eric achieved emancipation and was therefore freely able to terminate residency in his grandmother's household.

We must, therefore, conclude that the question of whether Eric Sleeper, at the time of the accident, was a resident of his grandmother's household for purposes of insurance coverage could not properly be decided on summary judgment. Accordingly, the trial court erred in granting CG's motion, and we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.