NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

—————————————

Strafford
No. 2013-569


SUSAN R. WHITE & a.

v.

VERMONT MUTUAL INSURANCE COMPANY & a.

Argued:  June 18, 2014
Opinion Issued:  November 21, 2014


Nixon, Vogelman, Barry, Slawsky & Simoneau, P.A., of Manchester (Leslie C. Nixon on the brief and orally), for the petitioners.


Primmer Piper Eggleston & Cramer PC, of Manchester (Gary M. Burt on the brief and orally), for the respondent, Vermont Mutual Insurance Company.


Law Office of V. Richards Ward, Jr., PLLC, of Wolfeboro (V. Richards Ward, Jr. on the memorandum of law), for the respondent, Charles Matthews.


LYNN, J.  The petitioners, Susan and Peter White, appeal an order of the Superior Court (Tucker, J.) denying their petition for a declaratory judgment that respondent Charles Matthews (Matthews) was covered under a

homeowner's insurance policy issued to his mother by respondent Vermont Mutual Insurance Company (Vermont Mutual).  We affirm.

The following facts were found by the trial court or are supported by the record.  This case arose when a dog owned by Matthews caused an accident that injured Susan White on July 3, 2011.  The incident occurred while Matthews was staying with friends at a home owned by his mother in Moultonborough.  The Moultonborough home was covered by an insurance policy issued to Matthews's mother by Vermont Mutual.  The policy defined an "insured" to include "residents of your household who are . . . your relatives."  Matthews's mother also owns a home in Naples, Florida, where she lives for approximately half of the year, and where Matthews usually visits only at Christmas.  The petitioners and Matthews claim that the Florida residence is Matthews's mother's primary residence, but they do not claim that Matthews is a resident of the Florida home.

Matthews was born in Boston and lived in Massachusetts until he moved to Moultonborough when he was thirteen years old.  As a teenager, he lived at the Moultonborough residence and attended Moultonborough Academy.  In 2000, after graduating from Boston University, he began working and living in Massachusetts full-time.  In 2005, he bought a building in Somerville, Massachusetts, which he converted into condominium units.  He sold several units and retained three:  one for his own use, and two for rentals.  Since 2005, Matthews has served as the head of the condominium association for that building.

Matthews has been unemployed since 2009 and receives financial assistance from his mother.  He uses his Somerville address on his resume.  Matthews testified that since graduating from college, if asked, he tells people that he lives in Massachusetts.  The last time Matthews filed tax returns prior to the 2011 incident leading to this case, he used his Somerville address.  His only telephone has a Massachusetts area code.

Matthews testified that he resides in Massachusetts for 80% or more of the year.  However, he has not changed his voting registration since he first registered to vote when he was eighteen, and he is still registered to vote in Moultonborough.  He voted in Moultonborough in the 2012 election, a month before the hearing in this case.  Matthews also has a New Hampshire driver's license and his vehicle is registered in New Hampshire.  However, his decision to register his car in New Hampshire was motivated by his desire to avoid buying automobile insurance, which is required in Massachusetts.

Matthews refers to the Moultonborough house as his mother's home, not his home.  He goes to Moultonborough occasionally for vacations, long weekends, and to visit his family.  He typically notifies his mother in advance to

obtain her permission to stay at the house, especially if he is bringing friends. However, he does not refer to the Moultonborough home as his vacation home either. When at the Moultonborough home, Matthews uses the room he occupied while growing up, and he keeps some of his personal belongings at the house. Matthews has a key to the Moultonborough home and a decal on his mother's old car, which he is now using, that allows him to enter the development in which the house is located. His boating license was issued in New Hampshire and he used to own a boat, which was formerly his mother's, that was registered to the Moultonborough address as well.

Following the 2011 incident involving Matthews's dog, the petitioners sought a declaratory judgment that Vermont Mutual is responsible for any damages they may recover from Matthews. After a bench trial, the trial court denied the petition, as well as the petitioners' motion for reconsideration. This appeal followed.

The interpretation of insurance policy language is a question of law for us to decide. Belanger v. MMG Ins. Co., 153 N.H. 584, 587 (2006). However, we review the trial court's factual findings deferentially, our task not being to determine "whether we would have found differently but to determine whether a reasonable person could find as did the trial judge." U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc., 123 N.H. 148, 153 (1983). Pursuant to RSA 491:22-a (2010), Vermont Mutual bears the burden of proving that its policy does not provide coverage.

Although Matthews is one of the respondents in this action, his arguments are in line with the petitioners' because he is seeking coverage under the Vermont Mutual policy at issue. The petitioners and Matthews assert that Matthews is a "resident relative" within the meaning of his mother's insurance policy. In furtherance of this argument, the petitioners contend that: (1) the trial court erred in ruling that a reasonable person in the position of the insured, when interpreting the policy, would not consider Matthews a resident of his mother's Moultonborough household on the date of Susan's injury; (2) the trial court erred in basing its ruling almost solely on Matthews's testimony that he subjectively considered Massachusetts to be his "primary" residence; (3) under the terms of a homeowner's insurance policy, an individual can have more than one residence when one residence is a vacation home; and (4) the trial court erred by not considering whether a reasonable person in the position of the insured would believe that a homeowner's insurance policy purchased to insure a vacation home would cover all family members who use the home for vacation purposes. Matthews argues that the trial court applied an incorrect legal standard, and that the Vermont Mutual policy is ambiguous. Because Matthews's arguments overlap with the petitioners' arguments, we will consider them together. In contrast, Vermont Mutual asserts that Matthews is a resident of Massachusetts and did not qualify as a resident of his mother's

household, and, consequently, was not entitled to coverage under the policy insuring the Moultonborough home. We agree with Vermont Mutual.

The Vermont Mutual policy at issue defines an "insured" to include "residents of your household who are . . . your relatives," but does not define the term "resident." However, we have considered the meaning of this term in the insurance context on multiple occasions, and have defined "residence" as "the place where an individual physically dwells, while regarding it as his principal place of abode." Belanger, 153 N.H. at 587 (quotation omitted). This definition considers two factors that must occur simultaneously: "(1) the person must physically dwell at the claimed residence; and (2) the person must regard the claimed residence as his principal place of abode." Id. Additionally, the term "household" is understood to be a group of people dwelling as a family under one head and under one roof. Metropolitan Prop. & Liabil. Ins. Co. v. Martin, 132 N.H. 593, 596 (1989). "Whether or not individuals are members of the same household is determined by the facts of each case." Limoges v. Horace Mann Ins. Co., 134 N.H. 474, 475 (1991). Likewise, although an interpretation of insurance policy language is a question of law, a "determination of residency is largely based upon the facts of each case." Belanger, 153 N.H. at 587.

> In interpreting policy language, we look to the plain and ordinary meaning of the policy's words in context. We construe the terms of the policy as would a reasonable person in the position of the insured based upon more than a casual reading of the policy as a whole. Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning. We need not examine the parties' reasonable expectations of coverage when a policy is clear and unambiguous; absent ambiguity, our search for the parties' intent is limited to the words of the policy.

Bates v. Phenix Mut. Fire Ins. Co., 156 N.H. 719, 722 (2008) (citations and quotations omitted). "Ambiguity exists if reasonable disagreement between contracting parties leads to at least two interpretations of the language." Colony Ins. Co. v. Dover Indoor Climbing Gym, 158 N.H. 628, 630 (2009) (quotation omitted). As we have already defined the term "resident" on multiple occasions in this context, however, there can be no disagreement as to its meaning and, therefore, there is no ambiguity. Thus, absent policy language containing a definition of the term "resident" that differs from our case law – which is not present here – we rely upon our settled definition of the term. Additionally, due to the lack of ambiguity, we need not examine whether a reasonable person in the position of the insured would expect that a homeowner's insurance policy for a vacation home would cover all family members who use it for vacation purposes. Consequently, our analysis is limited to the words of the Vermont Mutual policy. See Bates, 156 N.H. at 722.

4

The facts found by the trial court are similar to those in <u>Holyoke Mutual Insurance Co. v. Carr</u>, 130 N.H. 698 (1988). In that case, we upheld the denial of uninsured motorist coverage for an individual on the ground that he was not a "resident" of the insured's household. <u>Id</u>. at 698. The person for whom coverage was sought was over eighteen years of age, had moved into an apartment in Vermont, and obtained employment there. <u>Id</u>. at 699. Under these circumstances, we held that the individual was not a resident of his father's home for purposes of insurance coverage, even though he used his father's address on his driver's license, often visited his father's home, and still received mail there. <u>Id</u>. at 700; <u>see</u> <u>also</u> <u>Connolly v. Galvin</u>, 120 N.H. 219, 220-21 (1980) (holding that defendant was not resident of his mother's household, even though his driver's license listed his mother's address and he received mail there, because he expressed a belief that his residence was in a different location than his mother's home, he rented and occupied his own residence, and he testified that he was only living with his mother after expiration of his lease until he could find another place to live).

In <u>Limoges</u>, the plaintiff seeking coverage had a room at the home of his insured father where he kept clothing and personal belongings and where he also received mail and telephone calls. <u>Limoges</u>, 134 N.H. at 476. The plaintiff had a close relationship with his father, who provided him with financial support. <u>Id</u>. The policy at issue contained no requirement that a family member must permanently dwell in the home to be considered a resident relative. <u>Id</u>. Under those facts, we were not persuaded by the insurance company's argument that the plaintiff did not permanently reside in his father's home and, therefore, was not a resident. <u>Id</u>. <u>Limoges</u> is distinguishable from this case, however, because it involved a child of divorced parents who was found to be a qualifying resident of the household of the non-custodial parent for insurance coverage purposes. <u>See id</u>. at 475. In cases dealing with a child of divorced parents, the child often resides principally with one parent, but spends a significant amount of time with the other parent. As one court stated,

> Numerous other cases have found a child of divorced or separated parents – even though living primarily under the roof of only one parent – was a "resident" of both parents' "households" for purposes of insurance coverage. Courts note that children often leave belongings at both homes, have a room or area of their "own" in each home, and until the child expresses another intent, generally hold that the child is a resident of both homes.

<u>Farmers Mut. Ins. Co. v. Tucker</u>, 576 S.E.2d 261, 267-68 (W.Va. 2002) (footnote omitted).

Unlike the plaintiff in <u>Limoges</u>, Matthews independently owns and spends most of his time in his own home in Massachusetts. He considers

himself a resident of Massachusetts and refers to the Moultonborough property as his mother's home rather than his own. Although Matthews lived at the Moultonborough property as a teenager and college student, his statements and actions over the years following his college graduation express his intent to disregard the Moultonborough property as his residence and emphasize his decision to reside in Massachusetts. His connection to the Moultonborough property, such as his use of the New Hampshire address for his driver's license and voter registration, began when he lived in the home prior to and during college. As the trial court aptly observed, Matthews's connections to his mother's home "continue due more to inertia than to any perception on his part that the Moultonborough home is his abode." As a result, even if Matthews occupied the Moultonborough home at the time of the 2011 incident, he did not regard that residence as his principal place of abode. Therefore, he was not a "resident relative" of the Moultonborough home within the meaning of the policy.

The petitioners rely upon Concord Group Insurance Cos. v. Sleeper, 135 N.H. 67 (1991), in arguing that the trial court erred by basing its ruling almost solely upon Matthews's subjective testimony that he considered Massachusetts to be his "primary" residence, and not upon the objective facts tying him to New Hampshire. In Sleeper, the sixteen-year-old child seeking insurance coverage stated that he did not intend to return to the home of his insured grandmother, with whom he had been living. Id. at 70. We stated that this testimony "must be weighed against the complexities lent by his young age, immaturity, court involvement, and strained family relationships at that time." Id. However, because Sleeper came to us as an appeal of the trial court's grant of summary judgment for the insurer, we had no occasion to determine whether the child was, in fact, a resident of the insured's household. Id. at 71. We determined only that the record before the trial court left general issues of fact in dispute as to whether the child was emancipated so as to be able to determine residency on his own and therefore precluded the grant of summary judgment for the insurer. Sleeper thus is readily distinguishable from this case, and does not support the petitioners' position.

Here, not only has Matthews testified that he does not consider the Moultonborough home to be "his place," but the objective facts indicate that he is not a resident of that home. Unlike the sixteen-year-old child in Sleeper, Matthews is an educated, independent adult, who for many years has had his own residence in Massachusetts. He spends more than 80% of his time at that residence and visits his mother's Moultonborough home only on occasion. Matthews notifies his mother before visiting and seeks her permission to bring friends to the home. Moreover, Matthews listed his Massachusetts home as his residence on his resume, he used his Massachusetts address on his tax returns the last time he filed taxes, and his telephone has a Massachusetts area code. As a result, although Matthews does have some residual ties to his

6

mother's Moultonborough home stemming from his time there before and during college, the objective facts indicate that he is not a "resident relative" of the Moultonborough property within the meaning of his mother's homeowner's insurance policy.

Finally, the petitioners rely upon Damore v. Winnebago Park Ass'n, 876 F.2d 572 (7th Cir. 1989), in arguing that an individual can have more than one residence when one of those residences is a vacation home. The case does not support their argument, however. In Damore, an insurer sought to exclude coverage in a college student's action against his parents for injuries sustained at their summer cottage. Id. at 573-74. The parents' liability policy included "relatives if residents of your household" as additional insureds, but also contained an exclusion for injuries sustained by, among others, "any insured" or "any relative of any insured who resides on the insured premises." Id. at 572. Contrary to the petitioners' assertion, the court did not hold that "the son was a resident of both the family's primary residence and the vacation cottage." To the contrary, the court specifically reasoned that neither the named insureds (the parents) nor the son were residents of the cottage within the meaning of the policy because the cottage did not constitute a separate household from their primary residence. Id. at 573, 575.

> The Winnebago cottage was a weekend retreat for the entire Damore family. While it is true that [the son] did not "reside" on the Winnebago premises, neither did his parents. Appellant's attorney has argued the existence of a fictitious household which, applying appellant's own "residency requirement," would have no members.

Id. at 575.

Even if we were to assume that the Moultonborough property is a vacation home and that a person can have more than one residence for insurance purposes when one of the residences is a vacation home, the policy here, like that in Damore, requires that the additional insured be a resident relative of "your [the named insured's] household." To satisfy this requirement of sharing the same household, Matthews also would have to be a resident of his mother's primary residence in Florida. See id.; see also Still v. Fox, No. C-940954, 1995 WL 596062, at *1 (Ohio Ct. App. Oct. 11, 1995) (holding that adult child who maintained his own residence separate from his father's household, but regularly vacationed and kept gear at his father's vacation home, was not a resident of his father's household, and therefore not an insured under his father's insurance policy covering the vacation home). As noted previously, the petitioners do not claim that Matthews is a resident of his mother's Florida home.

For the reasons stated above, we hold that the trial court did not err in determining that Matthews is not a "resident relative" of the Moultonborough property within the meaning of the Vermont Mutual policy.

<u>Affirmed</u>.

DALIANIS, C.J., and CONBOY and BASSETT, JJ., concurred.