Grafton
No. 93-382

HIGH COUNTRY ASSOCIATES & *a.*

v.

NEW HAMPSHIRE INSURANCE COMPANY

September 29, 1994

*Upton, Sanders & Smith,* of Concord (*David P. Slawsky* and *Frederic K. Upton* on the brief, and *Mr. Slawsky* orally), for the plaintiffs.

*Devine, Millimet & Branch, P.A.,* of Manchester (*Andrew D. Dunn* on the brief and orally), for the defendant.

BROCK, C.J. The Superior Court (*Smith,* J.) granted summary judgment in favor of the defendant, New Hampshire Insurance Company (NHIC), denying the plaintiffs' petition for declaratory judgment seeking indemnification under a commercial liability insurance policy. On appeal, the plaintiffs argue that the trial court erred in ruling that the claim in the underlying suit did not constitute property damage caused by an occurrence within the terms of the policy. We reverse and remand.

The plaintiffs, High Country Homeowners' Association, High Country Associates, and Klaus Linnemayr, are the principal parties in an underlying suit to recover for damage to condominium units. They petitioned for declaratory judgment to determine whether the defendant must provide coverage for claims of property damage against its insured, High Country Associates. High Country Homeowners' Association (Association) represents owners of the condominium units that were constructed and sold between 1983 and 1992 by High Country Associates in Waterville Valley. The third plaintiff, Klaus Linnemayr, is a partner of High Country Associates. The question of coverage, as presented on appeal, pertains only to the policy issued by NHIC to High

Country Associates as the named insured for the period from August 1990 to August 1991.

In the underlying action, the Association sued High Country Associates and Linnemayr for breach of an implied warranty of workmanlike quality and for negligence alleging that the defendants' faulty design, selection of materials, construction, supervision, and inspection of the condominium units resulted in substantial moisture seepage into the buildings, causing mildew and rotting of the walls, and loss of structural integrity. The damage, as alleged, continued between 1983 and 1992.

■ In the declaratory judgment action, the superior court granted summary judgment to NHIC, ruling that the allegations of damage in the underlying suit did not constitute an "occurrence" as defined in the insurance policy. Summary judgment is an appropriate means of avoiding the expense and time of a full trial when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RSA 491:8-a (1983); *Concord Group Ins. Co's v. Sleeper,* 135 N.H. 67, 69, 600 A.2d 445, 446 (1991). When reviewing a motion for summary judgment, the court must consider the evidence in the light most favorable to the party opposing the motion and take all reasonable inferences from the evidence in that party's favor. *Id.*

■ The interpretation of the language of an insurance policy is ultimately a question of law for this court to decide. *Raudonis v. Ins. Co. of North America,* 137 N.H. 57, 59, 623 A.2d 746, 747 (1993). We take the plain and ordinary meaning of the policy's words in context, and we construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole. *Concord Gen. Mut. Ins. Co. v. Mitchell,* 138 N.H. 229, 231, 637 A.2d 903, 904 (1994). If the language of the policy reasonably may be interpreted more than one way and one interpretation favors coverage, an ambiguity exists in the policy that will be construed in favor of the insured and against the insurer. *Green Mt. Ins. Co. v. George,* 138 N.H. 10, 14, 634 A.2d 1011, 1014 (1993).

The NHIC policy provides coverage for

> those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
>
> . . . This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period.

> The "bodily injury" or "property damage" must be caused by an "occurrence."

According to the policy definition, " '[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In the negligence count of its amended writ in the underlying suit, the Association alleged that High Country Associates

> negligently and carelessly failed to employ good design and construction standards and practices with respect to the exterior walls, and failed to exercise reasonable care and skill in the design, specification of materials, construction, supervision and inspection of such exteriors.

The amended writ alleged the following resulting damage:

> [M]oisture has entered through the seams in the vertical siding on the exterior walls of the townhouse buildings and around the windows and decks and has been trapped within, resulting in widespread saturation, rotting and decay of the sheathing and damage to structural studding and loss of structural integrity, and such moisture has in turn seriously rotted the vertical siding through which such moisture had penetrated.

The Association made similar claims in a count of breach of implied warranties alleging that High Country Associates and Linnemayr had impliedly warranted the workmanlike quality of the construction.

Relying on *McAllister v. Peerless Insurance Co.,* 124 N.H. 676, 474 A.2d 1033 (1984), and *Hull v. Berkshire Mutual Insurance Co.,* 121 N.H. 230, 427 A.2d 523 (1981), the trial court concluded that because the Association's allegations were based on High Country Associates' defective workmanship, they did not constitute an occurrence within the meaning of the policy. Having found no occurrence, the trial court did not consider the applicability of particular exclusions asserted by NHIC in its motion for summary judgment. On appeal, NHIC maintains that the policy was not intended to provide coverage for the cost of repairing or replacing the insured's work or defective products and that the Association failed to allege an occurrence within the policy's coverage.

The trial court properly noted that the underlying suits in *McAllister* and *Hull* did not allege property damage beyond the improper performance of the task itself. In *Hull,* the plaintiffs discharged a masonry contractor while he was in the process of building a porch, steps and a retaining wall on their property and

then sued him for the allegedly defective work that he had completed. *Hull,* 121 N.H. at 230, 427 A.2d at 523–24. The applicable liability policy defined "occurrence" as "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 231, 427 A.2d at 524. We found that the plaintiffs had not alleged property damage covered by the policy because the only basis for their claim was money damages to compensate them for the contractor's defective work. *Id.*

Similarly, in *McAllister,* the plaintiff brought an action for breach of contract seeking money damages to pay for allegedly defective work by a contractor in installing a leach field and landscaping the plaintiff's property. *McAllister,* 124 N.H. at 678, 474 A.2d at 1035. The plaintiff did not allege that the defects had caused damage to any property other than the work product, as the damage claimed was only defective workmanship. *Id.* The applicable definition of "occurrence" was "an accident, including continuous or repeated exposure to conditions, which results in property damage." *Id.* at 680, 474 A.2d at 1036. We decided that "[t]he fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship," *id.,* and applied the holding from *Hull* that "defective work, standing alone, did not result from an occurrence." *McAllister,* 124 N.H. at 681, 474 A.2d at 1037.

By contrast, the Association alleged actual damage to the buildings caused by exposure to water seeping into the walls that resulted from the negligent construction methods of High Country Associates. The damages claimed are for the water-damaged walls, not the diminution in value or cost of repairing work of inferior quality. Therefore, the property damage described in the amended writ, caused by continuous exposure to moisture through leaky walls, is not simply a claim for the contractor's defective work. Instead, the plaintiff in the underlying suit alleged negligent construction that resulted in property damage, rather than merely negligent construction as in *Hull* and *McAllister.* Our decisions in *Hull* and *McAllister,* therefore, do not control this case.

NHIC argues, however, that policies such as the one at issue are intended to cover accidents, not the "business risks" of poor workmanship. To effect that purpose, NHIC maintains that the policy's definition of "occurrence" should be limited by the interpretation of "accident" in the definition. NHIC contends that "accident," as used in the definition of "occurrence," means a sudden event that is identifiable in time and place. As urged by

NHIC, the definition of occurrence would read: "Occurrence" means a sudden event, identifiable in time and place, which was caused but not intended, by the insured, including continuous or repeated exposure to substantially the same general harmful conditions.

The plaintiffs assert that "accident" should be interpreted to mean circumstances that were unexpected or unintended from the standpoint of the insured, but not limited to a sudden, precipitous event. Their interpretation is both reasonable and consistent with our previous interpretations of "accident" in the context of liability insurance. *See Fisher v. Fitchburg Mut. Ins. Co.,* 131 N.H. 769, 772–73, 560 A.2d 630, 632 (1989). "Occurrence" has a broader meaning than "accident" because "occurrence" includes "an injurious exposure to continuing conditions as well as a discrete event." *Vermont Mut. Ins. Co. v. Malcolm,* 128 N.H. 521, 523, 517 A.2d 800, 802 (1986). *See generally* THE NATIONAL UNDERWRITER COMPANY, THE FIRE CASUALTY & SURETY BULLETINS, "CASUALTY & SURETY" Occ-1 to -2 (January 1990).

■ Because reasonable disagreement about the interpretation of "accident" in the definition of "occurrence" is possible, as shown by the different interpretations urged by the parties, the term "accident" is ambiguous as it is used in the policy. *Smith v. Liberty Mut. Ins. Co.,* 130 N.H. 117, 122, 536 A.2d 164, 166 (1987). Having found the term ambiguous, we construe "accident" in favor of coverage. *Green Mt. Ins. Co.,* 138 N.H. at 14, 634 A.2d at 1014. Consequently, we interpret "accident" in the definition of "occurrence" to mean circumstances, not necessarily a sudden and identifiable event, that were unexpected or unintended from the standpoint of the insured. The damage alleged by the Association in the underlying suit was unexpected from the standpoint of High Country Associates and was caused by continuing exposure to moisture seeping through the walls of the units. The allegations of damage fit within our interpretation of "accident" and the definition of "occurrence" in the policy.

We considered the scope of the meaning of "occurrence" in *M. Mooney Corporation v. United States Fidelity & Guaranty Co.,* 136 N.H. 463, 618 A.2d 793 (1992). In *Mooney,* the general contractor for a fifty-two unit condominium project sought coverage under its liability insurance policy for damages alleged in an underlying suit for negligent construction of the condominium units. Part of the damage alleged was that after the units were sold to individual buyers, one unit was damaged by a chimney fire. An inspection revealed charring adjacent to the fireplaces in four other units, and improper construction of the fireplaces, causing the State fire

marshal to prohibit use of the fireplaces in all units pending correction of the hazard. *Id.* at 465, 618 A.2d at 794. Following appeal, the majority opinion held that loss of use of the fireplaces was causally linked to the fire in one unit and constituted property damage caused by an occurrence. *Id.* at 470, 618 A.2d at 797. The dissent acknowledged the occurrence of a fire in one unit, but concluded that the alleged negligent construction in the remaining units which resulted in the fire marshal's order did not constitute an accident or an occurrence of property damage within the meaning of the policy. *Id.* at 474, 618 A.2d at 800 (Brock, C.J., dissenting).

This case presents a clearer circumstance of property damage caused by an occurrence than did *Mooney.* The amended writ alleges actual damage to the structure of the condominium units by continuing exposure to moisture due to deficiencies in the construction of the units. Therefore, the Association alleged negligent construction that resulted in an occurrence, rather than an occurrence of alleged negligent construction. *See id.* Because the amended writ alleged an "occurrence" as defined by the applicable policy, summary judgment in favor of NHIC concluding otherwise was error. The policy exclusions raised by the parties in their briefs were not addressed by the trial court. We decline to consider the exclusions on the current state of the record and remand to the trial court for further proceedings.

*Reversed and remanded.*

All concurred.