SAMUEL AND MARTHA BETH WEAVER, INDIVIDUALLY AND AS
PARENTS AND NEXT FRIENDS OF JOHNATHAN WEAVER

v.

ROYAL INSURANCE COMPANY OF AMERICA

April 17, 1996

*Finis E. Williams, III*, of Concord, by brief and orally, for the plaintiffs.

*Bouchard & Mallory, P.A.*, of Manchester (*Christine Friedman* on the brief) and *O'Connor, O'Connor, Mayberger & First, P.C.*, of Albany, New York (*Dianne Bresee Mayberger* on the brief and orally), for the defendant.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Thomas J. Donovan* on the brief) and *Wiley, Rein & Fielding*, of Washington, D.C. (*Laura A. Foggan & a.* on the brief), for the Insurance Environmental Litigation Association, as *amicus curiae*.

*Hall, Hess, Kenison, Stewart, Murphy & Keefe*, of Manchester (*Kathryn B. Johnston* on the brief) for the New Hampshire Trial Lawyers Association, as *amicus curiae*.

BRODERICK, J. The plaintiffs, Samuel and Martha Beth Weaver, individually and as parents and next friends of Johnathan Weaver, appeal the Superior Court's (*Goode*, J.) grant of summary judgment to the defendant, Royal Insurance Company of America. They argue that neither the pollution exclusion nor the automobile exclusion in Samuel Weaver's business liability policy preclude coverage for their claims. We reverse and remand.

The parties agreed to the following facts for purposes of determining coverage. The underlying writ alleges the following: In the summer of 1989, while painting and stripping a house, Samuel Weaver, a commercial painter, carried home lead paint and dust particles on his clothing and paint tarps. His infant son, Johnathan, ingested this lead, either in their residence or in the automobile that Samuel Weaver used to commute to the work site, which raised the level of lead in Johnathan's blood, resulting in long-term health effects.

Martha Beth Weaver sued Samuel Weaver to recover for their son's lead poisoning. Thereafter, the plaintiffs filed a declaratory judgment action, seeking coverage under the business liability policy that Samuel Weaver had purchased from the defendant for his commercial painting business. The defendant moved for summary judgment, denying a duty to defend or indemnify based on the policy's pollution exclusion and automobile exclusion. The trial court granted the motion; this appeal followed.

In reviewing the grant of a motion for summary judgment, we consider the affidavits and all reasonable inferences drawn from them in the light most favorable to the non-moving party. *Dwire v. Sullivan*, 138 N.H. 428, 430, 642 A.2d 1359, 1360 (1994). If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. RSA 491:8-a, III (1983).

"In general, the rules governing the construction and interpretation of written contracts apply with equal force to insurance policies." *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 770, 423 A.2d 980, 984 (1980). If the policy language is ambiguous or where

conflicting interpretations exist, we construe the policy in favor of providing coverage to the insured. *Id.*

■ ■ We turn first to the pollution exclusion. The standard pollution exclusion, introduced in 1970, eliminated coverage for damages arising out of the discharge, dispersal, release or escape of irritants, contaminants, or pollutants into the air, water, or land, except when the discharge was sudden and accidental. *See* 7A J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4524, at 150 (Supp. 1995). In response to the "enormous expense and exposure resulting from the 'explosion' of environmental litigation," *Vantage Dev. v. American Env. Tech.*, 598 A.2d 948, 953 (N.J. Super. Ct. Law Div. 1991), the insurance industry redrafted the exclusion in the mid-1980's to eliminate the exception for "sudden and accidental" pollution and to omit language requiring the discharge to be "into the air, water, or land," resulting in what has been termed an "absolute" exclusion. *Id.* at 952-53.

The exclusion at issue here removes from coverage "Bodily Injury or Property Damage arising out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants." Although the policy broadly defines "pollutants," it does not define "discharge, dispersal, release or escape." "Where disputed terms are not defined in the policy or by State judicial precedent, we construe them in context and in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 682-83, 633 A.2d 1384, 1386 (1993) (citation and quotation omitted). Additionally, where the disputed language is contained in an exclusion purporting to limit liability, the limitation must be clear. *See Merchants Ins. Group v. Warchol*, 132 N.H. 23, 27, 560 A.2d 1162, 1164 (1989).

The plaintiffs argue that the cause of Johnathan's injuries was not the "discharge, dispersal, release or escape" of a pollutant. These undefined terms, they contend, are terms of art involving what is commonly understood as environmental contamination. *See Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 768 F. Supp. 1463, 1469 n.9 (D. Kan. 1991) (pollution exclusion contemplates "long-term environmental degradation or, at the very least, an environment-wide exposure to extremely hazardous or toxic substances"); *West American Ins. v. Tufco Flooring*, 409 S.E.2d 692, 699-700 (N.C. Ct. App. 1991) (discharge, dispersal, release, and escape are environmental terms of art), *review allowed*, 413 S.E.2d 555 (N.C.), *and review denied as improvidently allowed*, 420 S.E.2d 826 (N.C. 1992). The defendant counters that the pollution exclusion

is not restricted to environmental pollution and that the exclusion "clearly encompass[es] the spread of lead paint chips and dust generated by a lead paint stripping operation."

■ Both interpretations of the pollution exclusion are reasonable. While courts freely apply the pollution exclusion to environmental contamination, they are generally unwilling to hold that its scope reaches other pollution-related injuries. *Compare U.S. Liab. Ins. Co. v. Bourbeau*, 49 F.3d 786, 790 (1st Cir. 1995) (exclusion applies to land contaminated by lead paint scraping) *with Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762, 764 (Mass. 1992) (exclusion does not apply to ingestion of lead paint in private residence). Because there are two reasonable interpretations of the policy language, we conclude that the pollution exclusion is ambiguous. *Coakley v. Maine Bonding & Cas. Co.*, 136 N.H. 402, 410, 618 A.2d 777, 781-82 (1992); *see also Red Panther Chemical Co. v. Ins. Co. of State of Pa.*, 43 F.3d 514, 519 (10th Cir. 1994) ("escape" ambiguous when applied to expulsion of container of pollutants from moving vehicle).

■ Although the defendant maintains that the policy language clearly and unambiguously denies coverage, the cases that it cites to support this position are ones in which the insured sought coverage for an occurrence that readily fell within the exclusion's bounds. *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 120 (2d Cir. 1990) (fuel oil released from holding tank by vandals contaminated waterway); *Guilford Industries, Inc. v. Liberty Mut. Ins. Co.*, 688 F. Supp. 792, 794 (D. Me. 1988) (discharge of oil into waterway), *aff'd*, 879 F.2d 853 (1st Cir. 1989); *Budofsky v. Hartford Ins. Co.*, 556 N.Y.S.2d 438, 440–41 (Sup. Ct. 1990) (storage and release of industrial waste). Whether the transporting of lead dust from the work site to the Weavers' car and home was the "discharge, dispersal, release or escape" of a pollutant is not clear. *See Generali-U.S. Branch v. Caribe Realty*, 612 N.Y.S.2d 296, 299 (Sup. Ct. 1994) (lead poisoning did not arise out of discharge, dispersal, seepage, migration, release or escape of pollutant). Although as drafter of the policy the defendant had the opportunity to define this language, it chose not to do so. Consequently, the "doubtful language is to be construed most strongly against the party who used it in drafting the contract." *Trombly v. Blue Cross/Blue Shield*, 120 N.H. at 771, 423 A.2d at 984 (quotation omitted). We hold that the pollution exclusion is ambiguous when applied to the facts of this case and, as such, does not preclude coverage for the plaintiffs' claims. *A.B.C. Builders v. American Mut. Ins. Co.*, 139 N.H. 745, 748, 661 A.2d 1187, 1190 (1995).

Having determined that the pollution exclusion does not bar coverage, we next examine whether the policy's automobile exclusion does, even though the defendant has neither briefed nor argued this issue on appeal. *But see Junior Achievement v. United Way*, 132 N.H. 205, 207, 562 A.2d 1318, 1319 (1989) (court may summarily reverse issue where winning party below fails to brief and argue issue on appeal). This exclusion precludes coverage for bodily injury or property damage "which arises out of the ownership, maintenance, use LOADING or UNLOADING of . . . an AUTO which any INSURED owns, operates, rents or borrows." Where the injury arises out of an occurrence merely incidental to the use of an automobile, however, the exclusion does not apply. *See* 7A J. APPLEMAN, INSURANCE LAW AND PRACTICE § 4500.04, at 211–14 (Berdal ed. 1979).

■ ■ Martha Beth Weaver's writ alleged that Johnathan had ingested lead dust both in the plaintiffs' residence and in their automobile. Any dust ingested in the residence was incidental to the use of the automobile that transported it there. *See Akerley v. Hartford Ins. Group*, 136 N.H. 433, 439, 616 A.2d 511, 515 (1992) ("tenuous connection" with automobile is insufficient); *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 921–23 (Minn. 1983) (automobile exclusion did not bar recovery where live embers transported by trailer caused fire); *Bosko v. Pitts & Still, Inc.*, 454 P.2d 229, 235 (Wash. 1969) (automobile exclusion did not apply where dumptruck transported improperly stabilized waste material to site).

Nor does the automobile exclusion bar recovery for injury caused by any dust ingested in the Weavers' automobile. Johnathan's injury did not arise out of the automobile's "use." "Under New Hampshire law, ['use'] has been interpreted to mean . . . injuries originating from, or growing out of, or flowing from the use of the vehicle." *Akerley v. Hartford Ins. Group*, 136 N.H. at 439, 616 A.2d at 515 (quotation omitted).

> Not every injury occurring in or near a motor vehicle is covered by the phrase "use or operation." The accident must be connected with the use of an automobile *qua* automobile. Where the operation or driving function of an automobile or the condition of the vehicle itself is not the proximate cause of the injury, the occurrence does not arise out of its use or operation.

*United Services Auto. Ass'n v. Aetna C. & S. Co.*, 429 N.Y.S.2d 508, 510 (App. Div. 1980) (citations omitted). Although the writ alleges that one of the causes of Johnathan's injuries was ingestion of lead

dust in the Weavers' automobile, the vehicle must provide "more than just a situs for the accident." *State Farm Fire and Cas. Co. v. Kohl*, 182 Cal. Rptr. 720, 723 (Ct. App. 1982). Consequently, recovery is not barred by the automobile exclusion.

*Reversed and remanded.*

All concurred.