Cheshire
No. 96-236

RODNEY F. HUDSON

v.

FARM FAMILY MUTUAL INSURANCE COMPANY

July 7, 1997

*Van Dorn & Cullenberg*, of Hanover (*Arend R. Tensen* on the brief and orally), for the plaintiff.

*Bouchard & Mallory, P.A.*, of Manchester (*Mark L. Mallory* and *Elizabeth M. Leonard* on the brief, and *Mr. Mallory* orally), for the defendant.

BRODERICK, J. The plaintiff, Rodney F. Hudson, appeals the Superior Court's (*Mangones*, J.) denial of his motion for partial summary judgment, and its decision to grant the defendant's companion motion for summary judgment. We reverse and remand.

In September 1994, the plaintiff, a dairy farmer in Hinsdale, made a claim against an insurance policy issued by the defendant, the Farm Family Mutual Insurance Company, for property damage to his dairy cattle from stray voltage. Stray voltage typically results when "neutral-to-earth" voltage is present in elevated levels. *See ZumBerge v. Northern States Power Co.*, 481 N.W.2d 103, 107 (Minn. Ct. App. 1992). A farm's milking equipment, fences, watering troughs, and other implements may become electrically charged by this energy. *See Fox v. Interstate Power Co.*, 521 N.W.2d 762, 763 (Iowa Ct. App. 1994); *Hoover's Dairy, Inc. v. Mid-America Dairymen*, 700 S.W.2d 426, 429 (Mo. 1985). While stray voltage can be present on a farm for years without being detected by humans, prolonged exposure can lead to behavioral changes in cows who unwittingly become an integral part of an electrical circuit and receive an electrical shock each time they come into contact with a charged structure. *See Fox*, 521 N.W.2d at 763. Not surprisingly, the cows begin to avoid these structures, and may, for example, become reluctant to drink out of their watering troughs, resulting in dehydration and an inability to produce milk. *See Kolpin v. Pioneer Power & Light Co.*, 469 N.W.2d 595, 598 (Wis. 1991). Other health problems may also result from stray voltage, and the cows may ultimately become useless as dairy animals. *See Fox*, 521 N.W.2d at 763.

The plaintiff informed the defendant that tests performed on his farm revealed the presence of significant stray voltage. As a result of further testing, Public Service Company of New Hampshire installed a "blocker," which, the plaintiff reports, effectively ended the stray voltage problems. The plaintiff asserted that prior to this corrective action his cows had developed various medical problems as a result of the stray voltage, and that some cows had died and others had to be slaughtered. He claimed damages in excess of $100,000. He sought coverage under the "Special Farm Package 10" insurance policy which he first purchased from the defendant some twenty years ago. The plaintiff argued that the following sections of the policy provided coverage for his losses:

> This policy insures against direct physical loss to covered property caused by the following perils, but only for those perils in the Peril Group shown on YOUR schedule.
>
> . . . .
>
> R. **Sudden and Accidental Damage from Artifically** [*sic*] **Generated Electrical Current**. We do not cover loss to a tube, transistor or similar electronic component.
>
> . . . .

> V. **LIVESTOCK**. WE cover loss or damage to LIVESTOCK caused by perils A through R and, in addition, loss or damage to LIVESTOCK caused by electrocution . . . .

The defendant denied coverage on the grounds that the losses did not fall within any of the policy's enumerated perils. The plaintiff brought a declaratory judgment action in superior court challenging the defendant's denial of coverage and, thereafter, moved for partial summary judgment. The defendant countered with its own motion for summary judgment. The trial court granted the defendant's motion and denied the plaintiff's. This appeal followed.

The plaintiff argues that the injury to his cows constituted both "Sudden and Accidental Damage from Artific[i]ally Generated Electrical Current" and "loss or damage to LIVESTOCK caused by electrocution." The defendant counters that long-term exposure to an electrical current is not "sudden and accidental," and that the term "electrocution" unambiguously refers to exposure to electricity that results in immediate death. Neither term is defined in the policy. Because we find the phrase "sudden and accidental" ambiguous, and interpret the policy to provide coverage, we need not address the parties' disparate interpretations of the term "electrocution."

■ This court interprets an insurance policy in the same manner as any other contract. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 770, 423 A.2d 980, 984 (1980). If the language of a policy is reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer. *Green Mt. Ins. Co. v. George*, 138 N.H. 10, 14, 634 A.2d 1011, 1014 (1993). *See generally* Abraham, *A Theory of Insurance Policy Interpretation*, 95 MICH. L. REV. 531 (1996) (noting the policies behind this rule). By statute, the burden is on the insurance carrier to prove a lack of coverage. RSA 491:22-a (1983).

■ In support of their positions on both clauses of the policy, the parties have assembled a bevy of dictionaries, many of which support their respective interpretations. In such a case, it is easy to understand why this court has in the past questioned the role of dictionaries in the interpretive process, *e.g.*, *J & W Industries, Inc. v. Frank Enterprises, Inc.*, 111 N.H. 372, 373-74, 284 A.2d 907, 909 (1971), and this and other courts have maintained that, to some degree, language is always imprecise, *see Pacific Gas & Elec. Co. v.*

*G. W. Thomas Drayage & R. Co.*, 442 P.2d 641, 643-44 (Cal. 1968); *URS Corporation v. Ash*, 427 N.E.2d 1295, 1299 (Ill. App. Ct. 1981); *Spectrum Enterprises, Inc. v. Helm Corp.*, 114 N.H. 773, 776, 329 A.2d 144, 146 (1974). Dictionaries are of some value, however, to the extent they inform us of the common understanding of terms.

■ When disputed terms are not defined in the policy, we read them in context and interpret the language "as would a reasonable person in the position of the insured based on more than a casual reading of the policy." *High Country Assocs. v. N.H. Ins. Co.*, 139 N.H. 39, 41, 648 A.2d 474, 476 (1994); *see Weaver v. Royal Ins. Co. of America*, 140 N.H. 780, 782, 674 A.2d 975, 977 (1996). While a claimed ambiguity need not be apparent on the face of the policy, *Lapierre v. Cabral*, 122 N.H. 301, 305, 444 A.2d 522, 525 (1982), we will not perform amazing feats of linguistic gymnastics to find a purported ambiguity, *see Int'l Surplus Lines Ins. Co. v. Mfgs. & Merchants Mut. Ins. Co.*, 140 N.H. 15, 20, 661 A.2d 1192, 1195 (1995). The trial court's interpretation of the policy, including its determination that certain language is or is not ambiguous, is reviewed by this court *de novo. See Raudonis v. Ins. Co. of North America*, 137 N.H. 57, 59, 623 A.2d 746, 747 (1993); *see also Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust*, 137 N.H. 393, 395, 628 A.2d 260, 262 (1993).

As the parties note in their briefs, the term "sudden and accidental" has been extensively litigated in connection with pollution exclusion clauses in general liability policies. *See Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 541 nn.3-4 (Wyo. 1996) (citing over three dozen cases that have reached varying results on this issue). The courts that have interpreted the phrase "sudden and accidental" have done so in myriad ways, but the principal dispute has centered on the word "sudden." Some courts have held that "sudden" connotes an event which occurs quickly or abruptly. *E.g., Aeroquip Corp. v. Aetna Cas. and Sur. Co., Inc.*, 26 F.3d 893, 894 (9th Cir. 1994) (per curiam); *Lumbermens Mut. Cas. v. Belleville Ind.*, 555 N.E.2d 568, 572 (Mass. 1990); *Kerr-McGee Corp. v. Admiral Ins. Co.*, 905 P.2d 760, 763-64 (Okla. 1995); *Sharon Steel v. Aetna Cas. & Sur.*, 931 P.2d 127, 135 (Utah 1997). Others courts, while acknowledging that "sudden" may contain a temporal component, have concluded that the term may also be read to be synonymous with "unexpected." *E.g., Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1092 (Colo. 1991); *St. Paul Fire v. McCormick & Baxter*, 923 P.2d 1200, 1217 (Or. 1996); *Queen City Farms v. Central Nat. Ins. Co.*, 882 P.2d 703, 720 (Wash. 1994); *Just v. Land Reclamation,*

*Ltd.*, 456 N.W.2d 570, 573 (Wis. 1990). Accordingly, many of these courts have determined that the phrase "sudden and accidental" is ambiguous and interpreted the language in favor of providing coverage. *See St. Paul Fire*, 923 P.2d at 1218; *Just*, 456 N.W.2d at 573; *see also Claussen v. Aetna Cas. & Sur. Co.*, 380 S.E.2d 686, 688, 690 (Ga. 1989).

The policy before us provides coverage when an insured suffers loss or damage to livestock that is caused by "Sudden and Accidental Damage from Artific[i]ally Generated Electrical Current." The plaintiff argues that the phrase "sudden and accidental" is interchangeable with the phrase "unexpected and unintended." The defendant counters that adoption of the "plaintiff's position that 'sudden' means only 'unexpected' or 'unintended' would . . . make it synonymous with and redundant to 'accidental.'" We think the defendant has misread the plaintiff's argument. "Simply put, sudden means unexpected, and accidental means unintended." *New Castle County v. Hartford Acc. and Indem. Co.*, 933 F.2d 1162, 1194 (3rd Cir. 1991). The plaintiff is not arguing that "sudden," standing alone, should mean *both* "unexpected and unintended."

Contrary to the defendant's assertion, defining "sudden" to include unexpected events does not strip the word of its independent meaning and significance. While it is certainly possible to read the term "accidental" to include unexpected events, *see High Country Assocs.*, 139 N.H. at 44, 648 A.2d at 477-78, the joint use of the words "sudden and accidental" serves distinct purposes not accomplished by either word standing alone. *See, e.g., Queen City Farms*, 882 P.2d at 720 (noting that the exclusion of "sudden and accidental" events denies coverage to an event that, while unintentional, resulted from the insured's turning a "blind eye" to festering problems). Even if we were to find the words to be partially coextensive, we note that "[i]nsurance policies routinely use words that, while not strictly redundant, are somewhat synonymous." *New Castle County*, 933 F.2d at 1194.

In a different context, a leading text on insurance law instructs that "'sudden' is not to be construed as synonymous with instantaneous." 10A M. RHODES, COUCH ON INSURANCE 2D § 42:396 (rev. ed. 1982) ("When coverage is limited to a sudden 'breaking' of machinery the word 'sudden' should be given its primary meaning as a happening without previous notice"). While not determinative, such an interpretation suggests that the term "sudden and accidental" is at least reasonably susceptible to an interpretation consistent with "unexpected and unintended." *Cf. Ala. Plating v. U.S. Fidelity and Guar.*, 690 So. 2d 331, 336 (Ala. 1996). Finally, even if the word

"sudden" is given the temporal connotation the defendant advances, in this policy it is not clear if in order to be covered the *onset* of damages must occur "suddenly" or if the *aggregate* damage must occur "suddenly." *See Morton Intern., Inc. v. General Acc. Ins. Co.*, 629 A.2d 831, 847 (N.J. 1993), *cert. denied*, 512 U.S. 1245 (1994).

In short, the term "sudden and accidental" is, at the very least, not "so clear as to create no ambiguity which might affect the insured's reasonable expectations." *Cacavas v. Maine Bonding & Casualty Co.*, 128 N.H. 204, 208, 512 A.2d 423, 425 (1986). We therefore construe "sudden and accidental" in such a way as to provide coverage to the insured on the basis that the phrase includes events that are "unexpected and unintended." *See Green Mt. Ins. Co.*, 138 N.H. at 14, 634 A.2d at 1014. The plaintiff's motion for partial summary judgment should have been granted, and the defendant's motion for summary judgment should have been denied.

*Reversed and remanded.*

All concurred.