**AMERICAN STATES INSURANCE COMPANY, Plaintiff,**

v.

**TECHNICAL SURFACING, INC.; Phoenix Group, Inc.; Ephorm Freeman; and Phoenix Foods, Inc., Defendants.**

**No. CIV. 97–49 JRT/RLE.**

United States District Court, D. Minnesota.

March 12, 1999.

John M. Anderson and Kelly A. Putney, Bassford, Lockhart, Truesdell & Briggs, Minneapolis, MN, for plaintiff.

George G. Eck and Erik W. Scharf, Dorsey & Whitney, Minneapolis, MN, for defendants.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION

TUNHEIM, District Judge.

Plaintiff American States Insurance Co. filed this action for declaratory judgment seeking a determination of the scope of its insurance policy with defendant Technical Surfacing, Inc. ("Technical"). This matter is before the Court on defendant Phoenix Group Inc.'s ("Phoenix") objections to the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, dated November 30, 1998. The Magistrate Judge recommended that the Court grant plaintiff's motion for summary judgment and deny defendants' motion for partial summary judgment. Phoenix objects to both recommendations.

The Court has reviewed *de novo* Phoenix's objections to the Report and Recommendation, *see* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.1(c)(2), and agrees with the Magistrate Judge's conclusion. The Court accordingly grants plaintiff's motion for summary judgment and denies defendants' motion for partial summary judgment.

## I. FACTS

Technical is the holder of a standard Commercial General Liability ("CGL") insurance policy issued by plaintiff. Xylene fumes escaped while Technical was using a compound sealant on a floor, which permeated the rest of the building. The fumes left a chemical residue on all foods in Phoenix's grocery store. Plaintiff argues that under Minnesota law, the "absolute pollution" exclusion of Technical's policy excludes coverage under the facts of this case. The exclusion bars coverage for: " "bodily injury" or "property damage" arising out of the ... release or escape of pollutants." The exclusion only applies if the "pollutants are brought on or to the premises, site or location with such operations by [the] insured." Phoenix ar-

gues that the policy provides coverage because the pollution exclusion does not apply to pollution inside buildings, or in the alternative, is an ambiguous policy. Phoenix also argues that xylene fumes are not pollutants, and that the policy holder, Technical, did not bring any pollutants to the premises.

## II. DISCUSSION

The Court agrees with the Magistrate Judge's conclusion that the absolute pollution exclusion bars coverage for "bodily injury" and for "property damage" arising out of these facts. Phoenix objects to the Magistrate Judge's conclusion that the absolute pollution exclusion bars coverage, on the ground that the insurance industry inserted such exclusions into CGL policies only to protect itself against environmental pollution. Phoenix argues that even if no outdoor/inside distinction exists in the text of the exclusion, it is ambiguous and therefore any ambiguity should be resolved in favor of the insured. Phoenix further contends that under plaintiff's construction the policy is worthless to Technical. Technical could not have intended to purchase a policy with such limited coverage given the nature of its business.

The courts of Minnesota follow a plain meaning approach to the interpretation of insurance policies. *See Auto–Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 1999 WL 68556 *1 (Minn.Ct.App.1999); *Board of Regents v. Royal Ins. Co.*, 517 N.W.2d 888, 892 (Minn.1994). In *Auto–Owners*, the Minnesota Court of Appeals determined that the Minnesota Supreme Court's analysis in *Royal* governed whether the absolute pollution exclusion applied to lead-based paint in a residential home. *See Auto–Owners*, 588 N.W.2d at 778. In *Royal*, the Minnesota Supreme Court construed two differently worded policies and their pollution exclusions. The primary policy's exclusion precluded a claim for "bodily injury or property damage arising out of the discharge ... of smoke, vapors, soot, fumes, ... or other irritants, contam-

inants or pollutants into or upon land, the *atmosphere,* or any *water course or body of water."* *Royal,* 517 N.W.2d at 889 (emphasis provided). The excess policy's exclusion provided that "[t]his policy shall not apply ... to liability for contamination or pollution of land, *water, air* or real or personal property ·or any injuries or damages resulting therefrom caused by an occurrence." *Id.* at 593 (emphasis provided). The *Royal* court determined that because the excess policy's pollution exclusion substituted the words "water" for "watercourse or body of water," and "air" for "atmosphere," the pollution exclusion applied to inside pollution or contamination. *See id.* at 893. Thus, the court held the exclusion to be broader when using general terms such as "water" and "air." *See id.*

■ The *Auto–Owners* court addressed an exclusion identical to the one at issue in this case, in which the exclusion did not place any geographical limits on the location of the pollution. The *Auto–Owners* court reasoned that because the court in *Royal* had enlarged the scope of an exclusion when the controlling words were "air" and "water," as opposed to "atmosphere" and "water course or body of water," "when there is no such language, the scope of the exclusion is in its broadest form." *Auto–Owners,* 588 N.W.2d at 780. The court further stated that "[a]pplying an ordinary meaning approach to the pollution exclusion also coincides ·with Minnesota's general rule for insurance policy interpretation." *Id.* For these reasons, the Minnesota Court of Appeals rejected the argument that the absolute pollution exclusion only applied to environmental or outdoor pollution, and rejected the argument that the pollution exclusion was ambiguous. *See id.* at 778–780.

The Court is nevertheless sympathetic to Phoenix's arguments and notes with concern that, under plaintiff's interpretation, almost any substance could be deemed a "pollutant" within· the meaning of the exclusion. A failure ·to limit the breadth of the exclusion using clearly identifiable criteria could exclude coverage beyond reason. For this reason, some of the highest courts in other states have held against such a broad interpretation and instead interpreted the absolute pollution exclusion according to ·its environmental terms of art, limiting it to the traditional view of pollution as pollution to the environment, rather than inside contamination. *See American States Ins. Co. v. Koloms,* 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72 (1997); *American States Ins. Co. v. Kiger,* 662 N.E.2d 945 (Ind.1996); *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 667 A.2d 617 (1995); *Western Alliance Ins. Co. v. Gill,* 426 Mass. 115, 686 N.E.2d 997 (1997); *Weaver v. Royal Ins. Co.,* 140 N.H. 780, 674 A.2d 975 (1996). Nevertheless, Minnesota courts construe the absolute pollution exclusion under· its plain meaning. As Minnesota law is binding, the Court finds that the absolute pollution exclusion precludes Phoenix's claim for coverage under the particular circumstances of this case.

■ Phoenix also argues that the exclusion does not apply because the flooring residue found on the foods is not a pollutant. The flooring residue consisted of xylene fumes, however, and federal law provides that xylene is a pollutant. *See* Federal Clear Air Act, 42 U.S.C. § 7412(b) (1995) (listing xylene as a hazardous air pollutant). Merely because the substance is in a different form—fumes instead of liquid—does not render xylene a non-pollutant. In *Royal,* the Minnesota Supreme Court held asbestos fibers to qualify as an "irritant" and therefore also a pollutant. The Minnesota Supreme Court stated that it would be "a disservice to the English language if we were to say that asbestos fibers, which are a health hazard because of their irritant effects on the human body, · were not an irritant." *Royal,* 517 N.W.2d at 892. By this reasoning, noxious xylene ·fumes fall into the definition of "pollutants."

■ Phoenix· further argues that because Technical only brought xylene, not xylene fumes, to the premises, Technical

did not bring the pollutant on to the premises as is required for the exclusion to apply. The Court is unpersuaded by this argument. Technical did bring the substance onto the premises, albeit in a different form. As noted above, the courts of Minnesota apply a non-technical, plain meaning approach to interpret insurance policies. To find such a technical distinction for providing coverage would be contrary to the holdings of the Minnesota courts. The Court accordingly adopts the Magistrate Judge's Report and Recommendation.

### ORDER

Based on the foregoing, and all of the records, files, and proceedings herein, the Court **OVERRULES** the objections of Phoenix [Docket No. 43] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 42] as set forth above. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment [Docket No. 28] is **GRANTED.**

2. Defendant's motion for partial summary judgment [Docket No. 32] is **DENIED.**

LET JUDGMENT BE ENTERED ACCORDINGLY.