Hillsborough-northern judicial district
No. 97-476

## FEDERAL BAKE SHOP

v.

## FARMINGTON CASUALTY COMPANY

July 16, 1999

*Scotch & Zalinsky*, of Manchester (*Barry M. Scotch* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*John A. Lassey* on the brief, and *Jennifer L. Murphy* orally), for the defendant.

BROCK, C.J. The plaintiff, Federal Bake Shop, appeals an order of the Superior Court (*Sullivan*, J.) denying coverage under a building and personal property insurance policy issued by the defendant, Farmington Casualty Company. We reverse and remand.

The parties submitted an agreed statement of facts. The plaintiff owns commercial real estate in Bedford. In April 1996, the plaintiff learned that a toilet installed by one of its tenants had malfunctioned. As a result of the toilet "sticking," excess water had drained into the septic system causing the septic tank to become overloaded and a leach field to fail. During one fifteen-hour period, 5,000 gallons drained into the system, more than four times the system's capacity. The situation continued for at least fourteen days, causing the plaintiff to incur various expenses.

On April 29, the plaintiff notified the defendant of the loss. The defendant subsequently notified the plaintiff that its loss was not covered under the terms of the insurance policy. The plaintiff then sued the tenant that had installed the toilet and filed a petition for declaratory judgment against the defendant seeking coverage under the policy. *See* RSA 491:22 (1983 & Supp. 1996) (amended 1996).

The trial court concluded that a specific exclusion in the policy applied. That exclusion states: "We will not pay for loss or damage caused by or resulting from . . . [c]ontinuous or repeated seepage or leakage of water that occurs over a period of 14 days or more . . . ." The trial court found the exclusion to be clear and unambiguous and that the plaintiff's damages were caused by "leakage" that continued for more than fourteen days.

On appeal, the plaintiff argues that the trial court erred in interpreting the cause of the damages to constitute "leakage." "Leakage," according to the plaintiff, cannot fairly be interpreted to

include "an excessive overload of liquid into the system due to plumbing fixture malfunction." Rather, the plaintiff asserts that an ordinarily intelligent insured would understand the term to imply a low volume movement of water. The defendant counters that "leakage" unambiguously refers to anything that escapes through some opening accidentally, regardless of how much of the substance "flows" through the opening.

■ "The interpretation of insurance policy language is ultimately a question of law for this court to decide." *Calabraro v. Metropolitan Prop. & Cas. Ins. Co.*, 142 N.H. 308, 310, 702 A.2d 310, 312 (1997) (quotation omitted). In interpreting an insurance policy, "we take the plain and ordinary meaning of the policy's words in context, and we construe the terms of the policy as would a reasonable person in the position of the insured based on more than a casual reading of the policy as a whole." *Deyette v. Liberty Mut. Ins. Co.*, 142 N.H. 560, 561, 703 A.2d 661, 662 (1997) (quotation and brackets omitted). If more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer. *See High Country Assocs. v. N.H. Ins. Co.*, 139 N.H. 39, 41, 648 A.2d 474, 476 (1994). We will not, however, "perform amazing feats of linguistic gymnastics" to find a term ambiguous. *Hudson v. Farm Family Mut. Ins. Co.*, 142 N.H. 144, 147, 697 A.2d 501, 503 (1997).

An examination of the definition of "leakage" certainly supports the defendant's interpretation. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1285 (unabridged ed. 1961) (defining "leakage" as "the act . . . of leaking" and "leak" as "to enter or escape through a hole, crevice, or other opening [usually] by a fault or mistake"). Reading the exclusion in the context of the policy as a whole, however, we conclude that a reasonable person in the position of the insured could interpret the exclusion as does the plaintiff. In particular, we note that the exclusion immediately following the exclusion at issue in this case denies coverage in certain circumstances for damages caused by "[w]ater . . . that *leaks or flows* from plumbing . . . caused by or resulting from freezing." (Emphasis added.) The common meaning of "flow" is "to issue in a stream: GUSH, SPRING, WELL." *Id.* at 875. This implies precisely the constant movement of water in a high volume through the septic system that occurred in this case. Because the term "flows" is used disjunctively with "leaks" in the later exclusion, a reasonable person in the position of the insured could understand the term "leak" to connote a low volume movement, and thus the term "leakage,"

viewed in the context of the entire policy, to mean water that escaped in a low volume. Moreover, at least one other court has interpreted the phrase "leakage or seepage of water" in an insurance policy exclusion to connote "a gradual and slow moving event." *Primm v. State Farm Fire & Cas. Co.*, 426 So. 2d 356, 360 (La. Ct. App. 1983).

█   In view of the foregoing, we conclude that the term "leakage" as used in the policy "is, at the very least, not so clear as to create no ambiguity which might affect the insured's reasonable expectations." *Hudson*, 142 N.H. at 149, 697 A.2d at 504 (quotation omitted). Although the defendant could have defined "leakage" in the policy, it chose not to do so, and as such we construe the provision against the defendant. *See Weaver v. Royal Ins. Co. of America*, 140 N.H. 780, 783, 674 A.2d 975, 978 (1996). Because the defendant concedes that what occurred in this case did not constitute "seepage," we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

█   We decline to address the defendant's argument that an additional provision of the policy precludes coverage in this case. The trial court addressed that provision and ruled that it did not preclude coverage. Because the defendant neither cross-appealed the trial court's order on this issue nor moved to add the question on appeal, the issue is not properly before us. *See Concord Hosp. v. N.H. Medical Malpractice Joint Underwriting Assoc.*, 137 N.H. 680, 686, 633 A.2d 1384, 1388 (1993); *but see* SUP. CT. R. 16(3)(b) (amended May 6, 1999).

█   Finally, we decline the plaintiff's invitation to rule on whether it is entitled to recover from the defendant attorney's fees incurred in the liability action against its tenant. *Cf.* RSA 491:22-b (1997) (authorizing attorney's fees in a declaratory judgment action to determine coverage under an insurance policy when the insured party prevails). As the defendant correctly points out, the trial court has not addressed the issue of attorney's fees, and we decline to do so for the first time on appeal. *Cf. High Country Assocs.*, 139 N.H. at 45, 648 A.2d at 478.

*Reversed and remanded.*

All concurred.